Eduardo ROBINSON

v.

Charles FOTI.

Civ. A. No. 81–4563.

United States District Court,
E. D. Louisiana.

Dec. 15, 1981.

Eduardo Robinson, petitioner pro se.

Robert Finklestein, New Orleans, La., for defendant.

CHARLES SCHWARTZ, Jr., District Judge.

This matter came before this Court on a former day upon plaintiff's request for a temporary restraining order, and the supplemental affidavits thereto filed pursuant to this Court's order of November 19, 1981. This action arises under 42 U.S.C. § 1983, and jurisdiction is conferred on this Court by 28 U.S.C. § 1343. Now, having carefully considered the record in this matter, the memoranda and affidavits filed by petitioner and counsel for the sheriff, the law, as well as other authorities hereinafter set out, it is the opinion of the Court that plaintiff's motion must be, and hereby is, DENIED.

The petitioner, Eduardo Robinson is a Black American male. Born in Mississippi, he celebrated his eighteenth birthday less than two weeks ago. He is presently serving two consecutive life sentences which arose out of the brutal and apparently motiveless murder of a young woman one afternoon last year while she was gardening in her own back yard. When he was booked on November 6, 1980, the petitioner informed authorities that he was a Baptist. The petitioner now claims to be a Rastafari, and has petitioned this Court to enjoin the Sheriff of Orleans Parish Prison from en-

forcing prison haircut regulations[1] on the grounds that to do so would infringe the petitioner's First Amendment right to the free exercise of religion.

Specifically, item (2) of Robinson's original complaint and petition filed November 19, 1981 states:

Plaintiff contends that he is presently under a Black Religious [sic] and that to cut his hair would subject him to metal [sic], and physical anguish and would cause him "Irreparable Injury" [sic].

The third item of plaintiff's complaint states:

Your Plaintiff ask this Honorable Court to issue an Injunction to prohibit the said defendant and his successors in office from cutting your plaintiff's hair, because he would not be able to contine [sic] to participate in the religious culture in which he is presently involved in should he have to be forced to get the hair, in which come to him from birth cut from his head by force.

On November 19, 1981, this Court denied the petitioner's request for a temporary restraining order pending the submission of affidavits by both the sheriff and the petitioner. Plaintiff was directed to set forth all details concerning his claim, and the sheriff was directed to set forth the regulations concerning haircuts and the reasons therefor. Both plaintiff and defendant have complied with this Court's directions and filed two such affidavits each. The Court has reconsidered the motion for a temporary restraining order, in accordance with its order, but can find no basis for granting the relief which the plaintiff requests.

**1. HAIRCUT REGULATION**

The following rule and regulation of the Orleans Parish Criminal Sheriff's Office, as it pertains to an inmate's hair length, is promulgated for personal cleanliness and personal identification and to prevent the spread of disease and infection throughout the entire jail system in Orleans Parish.

The wearing of beards and goatees by male inmates is hereby prohibited. Hair shall be neat, clean, trimmed and shall present a groomed appearance.

■ It is well established that "when a prison regulation or practice offends a fundamental constitutional guarantee, federal courts will discharge their duty to protect constitutional rights" *Procunier v. Martinez*, 416 U.S. 396, 405–406, 94 S.Ct. 1800, 1807–1808, 40 L.Ed.2d 224, 236 (1974); *see also Barnes v. Government of Virgin Islands*, 415 F.Supp. 1218 (D.St.Croix 1976).

[The] cases clearly establish that a prisoner does not shed his first amendment rights at the prison portals. *Theriault v. Silber*, 453 F.Supp. 254, 261 (9 W.D.Tex. 1978) citing *Brown v. Peyton*, 437 F.2d 1228 (4th Cir. 1971).

However, even first amendment rights, though "preferred," are not unlimited, and while

. . . reasonable opportunities must be afforded to all prisoners to exercise the religious freedom guaranteed by the First and Fourteenth Amendments without fear of penalty, *Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972),

there are certain state interests which may justify restrictions of the First Amendment rights of prisoners.

It must be remembered that

lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system. *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974); *Price v. Johnston*, 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948).

■ In general, prisoners may be the subject of reasonable rules, regulations, and measures. In particular, reasonable state

Bush style hair cuts may not protrude out from the scalp more than 1½ (one and one-half) inches.

Side burns shall be neatly trimmed and extend to the lowest part of the ear lobe.

Wigs or hair pieces shall not be worn.

Mustaches may be worn provided that they are neatly trimmed.

The Orleans Parish Criminal Sheriff's Office will provide a full-time barber, free-of-charge, to service all inmates.

prison regulations as to personal hygiene and grooming have long been upheld in this circuit. *See*, for example, *Brooks v. Wainright*, 428 F.2d 652 (5th Cir. 1970), and the able opinion of the late Judge John Wood in *Theriault v. Silber*, 453 F.Supp. 254, 263 (W.D.Tex.1978).

While the general principles are clear, their application to a particular case such as this requires individualized evaluation and scrutiny. Although often the subject of ethnographers[2] and journalists,[3] the Rastafari have been an infrequent subject of judicial scrutiny.[4] While we are disinclined to agree with the dismissal of the group as,

> a vegetarian sect who eat no eggs or meat and do not cut or wash their hair, but leave it in "dreadlocks," *United States v. Moore*, 571 F.2d 76 f.2 (2nd Cir. 1978);

neither are we inclined, based on the facts of this case and the circumstances of this petitioner, to recognize the Rastafari as a religion within the meaning of the First Amendment.[5] However, even without reaching this difficult question, there are ample reasons for denying the plaintiff's petition.

██ First, whether or not we choose to regard the Rastafari as a religion,[6] the practice of wearing "dreadlocks," while popular, is not mandatory among members.[7] Second, plaintiff, in the record before us, fails to demonstrate by a preponderance of the evidence the sincerity of his conten-

tions. Not only does the petition appear to be the work of another hand, but Robinson demonstrates little if any familiarity with the Rastafari, their history, teaching, or practice. In his Complaint, Affidavit and Supplementary Affidavit, no mention is made of Haile Selassie, the Ethiopian leader credited with messianic attributes by the group. Similarly, Mr. Robinson appears to be entirely unfamiliar with Marcus Garvey, the powerful Black leader from Jamaica often regarded as the architect of Rastafari's philosophical foundations and political goals. Even Jamaica, whose history, culture, religions and music are so inextricably bound up with every aspect of Rastafari life is regarded as unworthy of mention by Robinson. Thus, even were the Rastafari among those groups which *are* entitled to First Amendment protection, Robinson has failed to make even the most minimal showing that he is in fact a bona fide member with a rudimentary knowledge of Rastafari teaching, despite three separate opportunities to do so.

Further, the claims he does make are entirely unsupported. His complaint states only that a haircut would subject him to "anguish" and would in some unspecified manner prevent him from further participation in the "religious culture in which he is presently involved," *supra*, while the plaintiff's affidavit contains only the erroneous *ipse dixit* assertion that "the Rastafarian Religion forbids the 'Agbolians' to cut their hair." Affidavit at 2. Plaintiff's fifth con-

---

**2.** *See*, for example, Leonard Barrett, *The Rastafarians* (Boston 1977); Leonard Barrett, The Rastafarians, *A Study in Messianic Cultism in Jamaica* (Puerto Rico 1968); and Smith, Augier and Nettleford, *The Report on the Rastafari Movement* (1960).

**3.** *See*, for example, Tracy Nicholas, *Rastafari, A Way of Life*, (New York 1979).

**4.** Apparently there are only eight federal cases which even acknowledge the existence of the Rastafari. None is earlier than 1976 and none has grappled with the complex task of characterizing or classifying the group (with the possible exception of *United States v. Moore*, 571 F.2d 76 (2nd Cir. 1978) which is quoted *infra*). Presently there are two pending cases which raise the question of whether the Rastafari are entitled to recognition as a "religion" within the meaning of the First Amendment. One is

currently before Judge Senter in the Northern District of Mississippi, *Scott v. Mississippi Department of Correction*; the other before Judge Laval in the Southern District of New York, *Hall v. Coughlin*, (No. 80 Civ. 2169 [PNL]).

**5.** *See Theriault v. Silber, supra*, on the subject of what constitutes a "religion."

**6.** It is the opinion of this Court that the Rastafari are more a Jamaican social and political subculture than a religion. Although there is a loosely organized body of belief and practice which might be described as religious in nature, it is our belief that the many secular aspects of Rastafari life and culture predominate. *See* Barrett (1970) and Nicholas, *supra*.

**7.** *See* Nicholas, p. 34, *supra*.

tention, far from supporting his claims, instead reveals his complete ignorance of Rastafari belief (which affords no recognition to the teachings, example or divinity of Christ):

> Herein your plaintiff further contends that they are forbidden to alter any natural state of their appearances through cosmetic surgery, haircuts, shaving, etc., [sic] This is forbidden due to the fact that Jesus Christ obviously went natural. He wore shoulder length hair, Mustache [sic] and a full beared [sic], and he was a real nature lover and Respected [sic] the rights of other people.

Additionally, Robinson's brand of Rastafarian belief seems highly selective. Although he seeks to avoid a haircut, he has made no effort to follow, and no request to be allowed to follow, the group's highly restrictive dietary norms.

On the other hand, for their part, the defendants' haircutting regulations are on their face reasonable, and the defendants have articulated the Constitutionally acceptable reasons of hygiene, security, and discipline for their promulgation. *See*, Supplemental Affidavit of defendant filed December 3, 1981, and its appendices.

Accordingly, plaintiff's petition for a temporary restraining order must be, and hereby is, DENIED.