733 P.2d 1263

**Rick CLEMENS, Petitioner-Appellant,**

v.

**STATE of Idaho, Respondent.**

**No. 16439.**

Court of Appeals of Idaho.

March 4, 1987.

Neal S. Stivers, Ada County Public Defender, Boise, for petitioner-appellant.

Jim Jones, Atty. Gen., by Lynn E. Thomas, Sol. Gen., and Timothy D. Wilson (argued), Deputy Atty. Gen., Boise, for respondent.

Before WALTERS, C.J., BURNETT, J., and HUNTLEY, J. pro tem.

PER CURIAM.

This is an appeal from dismissal of a petition for habeas corpus. The sole issue is whether the petitioner, an inmate at the Idaho State Correctional Institution (ISCI), has been denied adequate medical care, resulting in cruel and unusual punishment within the meaning of the Eighth Amendment to the United States Constitution. Upon the record presented, we hold that an Eighth Amendment violation has not been established.

The facts set forth in the petition and adduced in the proceedings below, when viewed in the best light to the petitioner, are as follows. Rick Clemens requested the ISCI medical staff to provide treatment for a condition known as strabismus or "lazy eye." He was referred to a private ophthalmologist under contract with the prison. The ophthalmologist examined Clemens and diagnosed his condition. The doctor told Clemens that he could undergo elective surgery in an attempt to correct the eye problem, but the surgery might not be fully successful. The doctor also advised Clemens that he could suffer double vision for some time after an operation. Despite the ophthalmologist's caveat, Clemens elected to have the surgery. The operation produced cosmetic improvement; unfortunately, it also resulted in double vision. The resultant eye strain produced headaches. Upon reexamination, the ophthalmologist told Clemens that his symptoms eventually should improve. If they did not, further surgery could "put his eyes back the way they were."

Clemens continued to experience double vision and related headaches. Not satisfied with his course of treatment, Clemens demanded further remedial measures. When his demands were not satisfied, he filed the instant petition for a writ of habeas corpus. His prayer for relief stated:

Petitioner prays that this Honorable Court issue it's [sic] WRIT OF HABEAS CORPUS ordering the Respondent to provide the needed and adequate medical treatment to which [the petitioner] is entitled. To order the medical staff at ISCI to allow for a second opinion of Petitioner's condition, and to make available all information contained in Petitioner's medical file.

Pursuant to rules of the Fourth Judicial District, the petition was referred to a magistrate who issued an order directing the state to show cause why a writ should not issue. At the show cause hearing, the magistrate did not grant the request for a second opinion. Instead, he ordered the prison authorities to determine whether corrective lenses or some other treatment would alleviate the problem. In response to the order, prison officials arranged yet another examination by the original ophthalmologist, together with a consultation with an optometrist about special eyeglasses. Clemens remained dissatisfied. He filed a motion for contempt, alleging noncompliance with the court's order. The magistrate, finding that "a continuum" of medical care had been provided to Clemens, denied the motion and dismissed the petition. The magistrate's order was upheld on appeal by the district court. Clemens appealed again, bringing the case to us.

When a habeas corpus petitioner alleges constitutionally inadequate medical care, his burden is a heavy one. He must satisfy two closely related requirements. First, he must prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976). Second, he

must demonstrate that his claim is based on more than his own lay disagreement with the treating physician regarding the appropriateness of professional treatment received. *Id.; Cooper v State*, 97 Idaho 781, 554 P.2d 959 (1976). Here, Clemens has shown that officials at the ISCI deliberately turned down his requests for a second medical opinion. However, the present record contains no showing that the need for a second opinion is based on anything other than Clemens' understandable frustration with his symptoms and his disenchantment with the ophthalmologist. The symptoms are within the range of potential side effects of surgery about which he had been warned. Consequently, there is no factual basis for a court to infer that he has been mistreated or neglected.

█ Absent reason for doubt as to the professional qualifications or abilities of a treating physician, state officials are entitled to rely upon the physician's recommendations. *Chancellor v. Lawrence*, N.D.Ill. No. 78 C 4496 (slip op., July 9, 1982), *quoting Mitchell v. Hendricks*, 431 F.Supp. 1295, 1302–03 (E.D.Pa.1979). Of course, this does not mean that an inmate is precluded in all circumstances from obtaining a second opinion. Courts in cases presenting circumstances different from those portrayed here have noted the propriety of furnishing second opinions. *See Buckley v. Rowe*, N.D.Ill. No. 78 C 465 (slip op., Oct. 26, 1978); *Phillips v. Kere*, 422 F.Supp. 1136 (D.Del.1976). However, on the record before us, we are constrained to hold that a factual predicate for mandating a second opinion on constitutional grounds has not been established.

Accordingly, the district court's decision, upholding the magistrate's order of dismissal, is affirmed.