746 P.2d 1022

Mike WILSON, Petitioner,

and

William Wolfe and John Merrifield, Petitioners–Appellants,

v.

STATE of Idaho, Al Murphy, Director of the Idaho State Department of Corrections, Arvon Arave, Warden, Idaho State Correctional Institution, Larry Wright, Deputy Warden–Security, Idaho State Correctional Institution, and their agents and employees, Defendants–Respondents.

No. 16508.

Court of Appeals of Idaho.

Nov. 30, 1987.

Petition for Review Denied Feb. 10, 1988.

William Wolfe and John Merrifield, pro se.

Jim Jones, Atty. Gen. by Timothy D. Wilson and Robert R. Gates, Deputy Attys. Gen., Boise, for defendants-respondents.

## SUBSTITUTE OPINION

The Court's prior opinion, dated August 3, 1987, is hereby withdrawn.

BURNETT, Judge.

This appeal presents questions concerning prison administrative policies that allegedly infringe upon free expression by, and the health of, the inmates. The questions are (1) whether the prison's policy on length of hair violates the First Amendment, and (2) whether the prison's refusal to comply with health-related provisions of state barbering laws creates a condition of confinement violating the Eighth and Fourteenth Amendments to the United States Constitution. A magistrate answered each question in the negative and dismissed the inmates' petition for a writ of habeas corpus. On appeal the district court eventually affirmed. Today, for reasons explained below, we join the district court in upholding the magistrate's order. However, we clarify the order as it relates to the health issue and we remand the case for such further refinement as the magistrate may deem appropriate.

The petitioners are inmates at the Idaho State Correctional Institution (ISCI), a facility operated by the Board of Correction. They filed a *pro se* petition for habeas corpus relief, challenging the prison's hair length and haircutting policies. The prison generally requires inmates, all of whom are male, to have short hair. Beards are prohibited, although moustaches are permitted if they are short and neatly trimmed. Exceptions are granted to inmates who demonstrate that their sincerely held religious beliefs require them to wear beards or long hair. Haircutting services are provided at the facility, not by licensed barbers, but by the inmates themselves. When this lawsuit was filed, several health-related barbering regulations allegedly were not being followed at the prison.

Pursuant to rules of the Fourth Judicial District, the inmates' petition was referred to a magistrate. He summarily denied the petition, but on appeal the district court reversed and remanded for a hearing. The hearing was held before a different magistrate, who directed the prison to employ "basic sanitation" practices in haircutting. He denied any other relief. Apparently satisfied that such "basic sanitation" practices were being followed, the magistrate then dismissed the inmates' petition. The case was appealed again to the district court. This time the magistrate's order was affirmed. Two of the petitioners, William Wolfe and John Merrifield, brought their appeal to this Court.

### I

We begin with the First Amendment issue. The petitioners contend that the prison's hair length policy violates their right to engage in a form of free expression. They claim an unequivocal right to wear their hair and beards in any fashion they choose while incarcerated. They assert no religious foundation for this claim.

### A

It is well settled that "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119, 125, 97 S.Ct. 2532, 2537, 53 L.Ed.2d 629 (1977). First Amendment rights are among those which may be limited.

A prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the correctional system. Thus, challenges to prison restrictions that are asserted to inhibit First Amendment interests must be analyzed in terms of the legitimate policies and goals of the corrections system, to whose custody and care the prisoner has been committed in accordance with due process of law.

*Pell v. Procunier,* 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974).

Here, the state has argued that the hair length policy is necessary for two reasons: prison security and sanitation. The ISCI warden testified that it would be difficult to identify prisoners who grew beards because it would radically alter their appearance. He further stated that it would be possible for inmates to hide narcotics or weapons in long hair or beards. Finally, he testified that short hair was more sanitary. In our view, these state interests are sufficient to limit the use of hair length as a means of expression. The safety of correctional personnel, of other prisoners and of the general public is advanced through the hair length policy. Similarly, the sanitation concern is valid. We cannot gainsay the importance of maintaining cleanliness in a crowded environment.

Other courts confronted with similar, non-religious claims have reached the same conclusion. *See, e.g., Ralls v. Wolfe,* 448 F.2d 778 (8th Cir.1971); *Daugherty v. Reagan,* 446 F.2d 75 (9th Cir.1971); *Winsby v. Walsh,* 321 F.Supp. 523 (C.D.Cal.1971); *Blake v. Pryse,* 315 F.Supp. 625 (D.Minn. 1970), *aff'd,* 444 F.2d 218 (8th Cir.1971). Of particular note is the recent decision in *McCabe v. Arave,* 626 F.Supp. 1199 (D.Idaho 1986). In that case, Judge Callister rejected a challenge to the ISCI hair policy, stating that "[t]he claim must be rooted in religious belief, not in purely secular or philosophical concerns." *Id.* at 1205. We agree. Accordingly, we hold that, as applied to inmates whose claims are not grounded in sincerely held religious beliefs, the ISCI hair policy is reasonable and is well within the discretion accorded to prison officials.[1]

## B

■ The petitioners further contend that even if the hair length regulations advance legitimate penological objectives, the regulations are constitutionally defective because they do not constitute the "least restrictive means" available to achieve the asserted goals of security and sanitation. This argument is without merit. Petitioners have not suggested any alternatives to the current hair length policy, and we fail to see how the prison could prevent the risks associated with long hair and beards without requiring the hair to be cut. We also observe that the hair policy is a narrow restraint upon expression. Personal grooming, or the lack of it, is not the only available means by which inmates can express themselves. There are many other avenues of free expression available. As the magistrate and district judge both noted, inmates may write, draw or hold discussion groups. Accordingly, we reject the petitioners' First Amendment challenge.

## II

We now turn to the health issue. The petitioners claim that adequate sanitation standards are not being followed in cutting hair at the ISCI. On appeal, this claim has been loosely styled as a denial of due process. However, the petition itself specifically refers to the Eighth Amendment, which prohibits cruel and unusual conditions of confinement. Because the pleadings and briefs were drafted by prisoners *pro se,* not by a lawyer, we will give them a broad, non-technical interpretation. *Ulmer v. Chancellor,* 691 F.2d 209 (5th Cir.1982); *Hogan v. Midland County Commissioners Court,* 680 F.2d 1101 (5th Cir.1982).

■ The petition does not attack the legal authority under which the prisoners are confined. Rather, it challenges a condition of confinement. Although habeas corpus relief was thought at one time to apply

---

1. The courts are divided in their treatment of religious claims. Some hair and beard regulations have been upheld even against religious challenges. *See, e.g., Hill v. Blackwell,* 774 F.2d 338 (8th Cir.1985); *Wilson v. Schillinger,* 761 F.2d 921 (3d. Cir.1985), *cert. denied,* 475 U.S. 1096, 106 S.Ct. 1494, 89 L.Ed.2d 895 (1986); *Robinson v. Foti,* 527 F.Supp. 1111 (E.D.La. 1981). Other courts have struck down as unconstitutional regulations applied to prisoners who demonstrated sincerely held religious beliefs that prevented them from cutting their hair or beards. *See, e.g., Fromer v. Scully,* 817 F.2d 277, 41 Crim.L.Rep. (BNA) 2147 (2d Cir.1987) (Orthodox Jew); *Moskowitz v. Wilkinson,* 432 F.Supp. 947 (D.Conn.1977) (Orthodox Jew); *Monroe v. Bombard,* 422 F.Supp. 211 (S.D.N.Y. 1976) (Sunni Muslims). We are not required by the instant case to take a position on this sensitive controversy.

only to the legality of a sentence, the modern view, adopted in Idaho, allows prisoners to bring Eighth Amendment challenges to conditions of confinement by means of habeas corpus petitions. *Mahaffey v. State,* 87 Idaho 228, 392 P.2d 279 (1964); *Clemens v. State,* 112 Idaho 638, 733 P.2d 1263 (Ct.App.1987). This view is widely shared. *See, e.g., Rhodes v. Chapman,* 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981); *Wilwording v. Swenson,* 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971) (per curiam); *Harris v. MacDonald,* 532 F.Supp. 36 (N.D.Ill.1982); *In re Allison,* 425 P.2d 193 (Cal.1967), *cert. denied, Allison v. Nelson,* 389 U.S. 876, 88 S.Ct. 172, 19 L.Ed.2d 163 (1967); *Harrah v. Leverette,* 271 S.E.2d 322 (W.Va.1980).

Essentially, the petitioners argue that the ISCI has created an unhealthy condition of confinement by refusing to comply with barbering standards contained in I.C. §§ 54–501 *et seq.* These statutes, and regulations promulgated thereunder by the state Board of Barber Examiners, establish procedures for licensing barbers and for maintaining sanitary conditions in places where hair is cut. They are supplemented by I.C. §§ 39–2001 to –2003, authorizing the Director of the Department of Health and Welfare "to make such rules and regulations as are necessary to safeguard the public health, and to prevent the spread of contagious or infectious diseases...." Apparently deeming the regulations adopted by the Board of Barber Examiners to be sufficient, the Director has promulgated no additional rules.

The state contends that there is no statutory or constitutional violation because laws relating to barbering do not apply to cutting the hair of prison inmates. The

magistrate and the district judge agreed with this contention. They both concluded that because prisoners are not members of the "public generally," as set forth in I.C. § 54–502, they are not protected by the standards enunciated in the statutes or in the implementing regulations.[2] *Cf. Montejano v. Rayner,* 33 F.Supp. 435 (D.Idaho 1939) (barbering statutes intended to protect the general public).[3] However, the magistrate implicitly recognized the inmates' health concerns by ordering that the ISCI provide the means to "sanitize (not necessarily sterilize)" barbering instruments and that the prison avoid cutting hair in places where food is eaten or served. The state has not cross-appealed from these provisions of the magistrate's order.

We need not decide today whether prisoners are members of the general public, triggering the application of licensure requirements to persons cutting hair at the prison. The issue is health. Even if prisoners are not members of the "public generally," the Eighth Amendment protects them from unsanitary living conditions and unnecessary exposure to communicable diseases. *Rhodes v. Chapman, supra* (Brennan, J., concurring); *Madison County Jail Inmates v. Thompson,* 773 F.2d 834 (7th Cir.1985); *Goodson v. City of Atlanta,* 763 F.2d 1381 (11th Cir.1985); *Blake v. Hall,* 668 F.2d 52 (1st Cir.1981), *cert. denied,* 456 U.S. 983, 102 S.Ct. 2257, 72 L.Ed.2d 862 (1982); *Ramos v. Lamm,* 639 F.2d 559 (10th Cir.1980), *cert. denied,* 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981); *Williams v. Edwards,* 547 F.2d 1206 (5th Cir.1977); *Gates v. Collier,* 501 F.2d 1291 (5th Cir.1974); *Crain v. Bordenkircher,* 342 S.E.2d 422 (W.Va.1986). As noted by

---

2. Idaho Code § 54–502 provides as follows:
   Any one or any combination of the following practices (when done upon the upper part of the human body for cosmetic purposes and not for the treatment of disease or physical or mental ailments and when done for payment either directly or indirectly or without payment *for the public generally* ) constitutes the practice of barbering:
   Shaving or trimming the beard or cutting, trimming, arranging, dressing, curling, waving by any method, straightening, cleansing,

singeing, bleaching, coloring, or similar work upon the hair.... [Emphasis added.]

3. Some courts in other jurisdictions have determined that inmates are members of the general public for regulatory purposes. *See Martin v. Department of Corrections,* 424 Mich. 553, 384 N.W.2d 392 (1986); *In re Jones,* 120 Misc.2d 445, 466 N.Y.S.2d 175 (N.Y.Sup.Ct.1983), *aff'd,* 101 A.D.2d 705, 475 N.Y.S.2d 809 (1984), *aff'd,* 64 N.Y.2d 1003, 489 N.Y.S.2d 50, 478 N.E.2d 191 (1985).

the United States Supreme Court, the modern import of the Eighth Amendment requires judges to review conditions of confinement with due regard for "broad and idealistic concepts of dignity, civilized standards, humanity and decency." *Estelle v. Gamble*, 429 U.S. 97, 102, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976).

This does not mean that the Eighth Amendment is implicated by every inmate complaint about the conditions of his confinement. The courts are not super-administrators of the prison system. But the instant case merits judicial attention because it implicates health standards which the people of this state, through the Legislature and duly appointed members of the Board of Barber Examiners, have established as minimally acceptable levels of cleanliness. Although a deviation from statutory or regulatory standards does not establish a constitutional violation *per se*, it is a factor to be considered when determining whether contemporary standards of decency have been met. *Ramos v. Lamm*, *supra* (violations of state health code); *Williams v. Edwards*, *supra* (violations of fire and sanitation codes). Moreover, we focus on the health-related provisions of the barbering statutes, and of the pertinent regulations, because they minimize any subjectivity in our evaluation of the prison's haircutting practices. The state's own published health standards are thereby recognized and given effect. The regulations pertinent here are contained in the Appendix to our opinion.

The state resists the application of these health standards to prisoners because the petitioners in this case have not presented evidence showing that existing practices at the ISCI actually have contributed to the spread of disease. We believe it is unnecessary to require evidence that an infectious disease already has spread in a crowded prison before the courts can prescribe a remedy. *Cf. Lareau v. Manson*, 651 F.2d 96 (2d Cir.1981) (failure to screen incoming prisoners for communicable diseases violated the Eighth Amendment); *Dimarzo v. Cahill*, 575 F.2d 15 (1st Cir.), *cert. denied*, 439 U.S. 927, 99 S.Ct.

312, 58 L.Ed.2d 320 (1978) ("one need not wait for the conflagration" before remedying fire code violations). Even without proof that current haircutting procedures actually have contributed to the spread of communicable diseases, we conclude that the prison's refusal to comply with duly promulgated health regulations raises a bona fide Eighth Amendment issue. *Compare Estelle v. Gamble, supra* (deliberate indifference to serious medical needs).

Accordingly, we endorse the magistrate's decision, affirmed by the district court, insofar as it requires the prison to provide "basic sanitation" in haircutting. To give the phrase "basic sanitation" a clear meaning, we interpret it as incorporating each of the health-related safeguards contained in the regulations appended to our opinion. This interpretation is consistent with the general tenor of the magistrate's decision, with the possible exception of the passage in which he ordered the ISCI to provide the means for inmate barbers to "sanitize (not necessarily sterilize) barbering instruments provided for inmate haircuts." The magistrate did not define what he meant by sanitizing short of sterilization, nor did he explain why any standard of cleanliness other than sterilization should be employed. This ambiguity is resolved by requiring sanitization in accordance with the procedures described in the appended regulations. These procedures presumably are designed to achieve a satisfactory level of instrument sterilization.

On remand, we direct the magistrate to determine whether the ISCI is complying with the health standards adopted here. We recognize, of course, that the Board of Barber Examiners did not have prison security in mind when it promulgated these health standards. The special demands of prison administration may require flexibility in implementing the standards. Accordingly, we authorize the magistrate to adjust the standards incorporated into his order, upon a showing of good cause.

The decision of the district court, sustaining the magistrate's order, is affirmed, subject to our clarification and to further adjustment as appropriate. The case is re-

manded for such further proceedings as the magistrate may deem necessary. No costs or attorney fees awarded on appeal.

WALTERS, C.J., and SWANSTROM, J., concur.

## APPENDIX

The regulations of the Idaho Board of Barber Examiners, contained in IDAPA 2401.-L.1–L.17, provide in pertinent part as follows:

L. Inspection and Santitary rules: Each barber shop and barber school is subject to inspection by agents of the board or bureau in accordance with following rules (reference Section 54–524, Idaho Code.). . . .

1. PREMISES. All shops and schools shall be open to inspection during business hours to authorized representatives of the Cosmetology and Barber Boards. The use of shops or schools as living, dining, or sleeping compartments is prohibited. All shops and schools shall be maintained in an orderly manner.

. . . .

4. INSTRUMENT CLEANING. Razors, combs, brushes, cutting heads of clipping machines, and all other instruments used by operators upon the customers shall be thoroughly cleaned after each usage. Every precaution must be used to prohibit the transfer of bacteria, material and arthropods from one person to another by means of instruments. Instruments to be cleaned prior to storage.

. . . .

5. INSTRUMENT SANITIZING. Instruments must be sanitized after cleaning previous to use on each patron. This may be done by boiling the instruments in water for two minutes or totally immersing the instruments in an approved sanitizing solution for not less than two minutes. Other methods of sanitizing, if approved by the Cosmetology and Barber Boards, may be used.

. . . .

7. TOWELS. Clean towels shall be used for each patron served. A neckband of paper or clean towels shall be placed around the neck of each patron when a multi-use cloth or cape is used.

. . . .

8. STORAGE OF EQUIPMENT. Clean linen and towels and all instruments shall be stored in a clean closed cabinet or in sanitizing equipment.

. . . .

9. DISPENSERS. All liquids and powder dispensers shall be in shaker top containers. No multi-use powderpuff, sponge or duster shall be used. The use of styptic sticks or pencils is prohibited.

. . . .

10. UNIFORMS. Every person working as an operator shall wear a clean and washable uniform, apron or coat while working.

. . . .

11. HANDS. Every operator or person working in a shop shall wash his hands before waiting on any and each customer.

. . . .

12. WATER SUPPLY. Water supplies for shops and schools shall be from an approved source, convenient access from within the work area. Hot and cold running water with sufficient basins with approved disposal systems.