50 P.3d 1043

**Scott R. DUVALT, Petitioner–Appellant,**

v.

**Pam SONNEN; Idaho Department Of Correction; and Idaho Parole Commission, Respondents.**

No. 28021.

Court of Appeals of Idaho.

June 13, 2002.

Scott R. Duvalt, Boise, pro se appellant.

Hon. Alan G. Lance, Attorney General; Timothy D. Wilson, Deputy Attorney General, Boise, for respondent.

PERRY, Chief Judge.

Scott R. Duvalt appeals from the district court's order dismissing Duvalt's petition for writ of habeas corpus. We affirm.

## I.

### FACTS AND PROCEDURE

Duvalt was serving, at the South Idaho Correctional Institution (SICI), a unified term of seven years, with a minimum period of confinement of one and one-half years, for delivery of a controlled substance, with an enhancement for being a subsequent violator. Duvalt filed a pro se petition for writ of habeas corpus alleging that his right to be free from cruel and unusual conditions of confinement under the Eighth Amendment was being violated because he was not receiving adequate treatment for Attention Deficit Hyperactivity Disorder (ADHD). In addition, Duvalt asserted that his right to due process was violated because the Commission of Pardons and Parole refused to consider him for parole until he had been incarcerated at SICI for at least six months, despite Duvalt being parole-eligible prior to that time. The state filed a response to Duvalt's petition and a motion to dismiss.

Without holding an evidentiary hearing, the district court granted the motion to dismiss Duvalt's petition. In its memorandum opinion and order, the district court held that Duvalt had received medical care while incarcerated at SICI and that he had not shown a deliberate indifference to a serious medical need. Additionally, the district court held that Duvalt did not have a constitutional right to a parole hearing within a specific time and that the district court was not in a position to grant the relief sought by Duvalt in that regard. Duvalt appeals.

## II.

### STANDARD OF REVIEW

The decision to issue a writ of habeas corpus is a matter within the discretion of the trial court. *Hays v. State,* 132 Idaho 516, 518, 975 P.2d 1181, 1183 (Ct.App.1999). When we review an exercise of discretion in a habeas corpus proceeding, we conduct a

three-tiered inquiry to determine whether the lower court rightly perceived the issue as one of discretion, acted within the boundaries of such discretion, and reached its decision by an exercise of reason. *Id.* If a petitioner is not entitled to relief on a petition for a writ of habeas corpus, the decision by the petitioned court to dismiss the petition without an evidentiary hearing will be upheld. *Id.,* at 518–19, 975 P.2d at 1183–84.

 In the case before us, the district court considered affidavits filed by Duvalt, a matter outside the pleadings, when it granted the motion to dismiss Duvalt's petition for habeas corpus relief. When a court considers matters outside the pleadings, such motion must be treated as a motion for summary judgment. *Hellickson v. Jenkins,* 118 Idaho 273, 276, 796 P.2d 150, 153 (Ct.App. 1990). Summary judgment under I.R.C.P. 56(c) is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. On appeal, we exercise free review in determining whether a genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law. *Edwards v. Conchemco, Inc.,* 111 Idaho 851, 852, 727 P.2d 1279, 1280 (Ct.App.1986). When assessing a motion for summary judgment, all controverted facts are to be liberally construed in favor of the nonmoving party. Furthermore, the trial court must draw all reasonable inferences in favor of the party resisting the motion. *G & M Farms v. Funk Irrigation Co.,* 119 Idaho 514, 517, 808 P.2d 851, 854 (1991); *Sanders v. Kuna Joint School Dist.,* 125 Idaho 872, 874, 876 P.2d 154, 156 (Ct.App.1994).

## III.

## ANALYSIS

### A. Medical Treatment

#### 1. Deliberate indifference

 Duvalt was diagnosed as suffering from ADHD several years prior to being sentenced for the underlying offense and was prescribed Ritalin. In his habeas corpus petition, Duvalt asserted that the staff at SICI refused to supply him with Ritalin and that he was not receiving any treatment for his condition because the Department of Correction did not recognize such a condition as a serious medical need warranting treatment. The district court ruled that Duvalt was being treated for ADHD, albeit not with Ritalin, and that Duvalt's complaint involved a disagreement with SICI staff over the proper course of treatment for his condition.

 The appropriate inquiry when an inmate alleges that prison officials failed to attend to serious medical need is whether the officials exhibited deliberate indifference. *Hudson v. McMillian,* 503 U.S. 1, 5, 112 S.Ct. 995, 998, 117 L.Ed.2d 156, 165 (1992); *Clemens v. State,* 112 Idaho 638, 639, 733 P.2d 1263, 1264 (Ct.App.1987). A determination of deliberate indifference involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the prison's response to that need. *See United States ex rel. Walker v. Fayette County, Pennsylvania,* 599 F.2d 573, 575 (3d Cir.1979). Serious medical needs include those needs diagnosed by a physician as mandating treatment or those that are so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Garnett v. Coyle,* 33 P.3d 114, 121 (Wyo. 2001).

 In assessing the nature of the prison's response to an inmate's serious medical need, there must be a purposeful act or failure to act on the part of prison officials. *Estelle v. Gamble,* 429 U.S. 97, 103–04, 97 S.Ct. 285, 290–91, 50 L.Ed.2d 251, 259–60 (1976). Although an inmate is not constitutionally guaranteed treatment at the level demanded by him or her, *State v. Clay,* 124 Idaho 329, 332, 859 P.2d 365, 368 (Ct.App. 1993), the failure to respond to a known medical problem can constitute deliberate indifference. *See Estelle,* 429 U.S. at 103–04, 97 S.Ct. at 290–91, 50 L.Ed.2d at 259–60; *Rogers v. Evans,* 792 F.2d 1052, 1058 (11th Cir.1986). Deliberate indifference may also be manifested by an intentional delay in access to medical care or by intentionally interfering with a prisoner's treatment once prescribed. *Estelle,* 429 U.S. at 104–05, 97 S.Ct. at 291, 50 L.Ed.2d at 260. The deliberate

indifference standard applies equally to psychiatric needs. *Rogers,* 792 F.2d at 1058. In order to establish deliberate indifference, however, a petitioner must demonstrate that his or her claim is based on more than a disagreement with the treating physician regarding the appropriateness of professional treatment received. *Clemens,* 112 Idaho at 639, 733 P.2d at 1264.

With these principles in mind, we turn first to the seriousness of Duvalt's medical need. The record reflects that Duvalt has suffered for years from ADHD and related behavioral problems. Duvalt was officially diagnosed with the condition in 1992, although the examiner there noted that Duvalt likely suffered with the condition for several years prior to that time. A psychological evaluation performed in 2000 in anticipation of sentencing indicated that Duvalt suffered from ADHD and recommended that he be treated with Ritalin. The examiner noted that without treatment, Duvalt was prone to "cognitive rigidity," meaning that he was unable to formulate or accept alternative solutions to problems he encountered. In addition, the examiner noted that Duvalt had responded favorably to Ritalin in the past. Based on the evidence in the record, Duvalt has made a prima facie showing that his condition constituted a serious medical need and that treatment by SICI staff was warranted.

We thus examine the response by SICI staff to Duvalt's serious medical condition. In his habeas corpus petition, Duvalt claimed that he was denied Ritalin upon entering SICI on or about February 15, 2001. Duvalt averred that he was denied Ritalin due to the department's policy of not recognizing ADHD as a serious medical need and prohibiting the prescription of Ritalin. Duvalt further asserted that he was not given any alternative form of treatment and did not see a psychiatrist regarding his condition until March 26, at which time the psychiatrist examined Duvalt and prescribed Thorazine.[1] Duvalt refused to take the prescribed Thorazine, however, and insisted upon receiving Ritalin. The psychiatrist declined to prescribe Ritalin.

Accepting the truth of Duvalt's assertions as we must, we conclude that Duvalt has shown that SICI staff intentionally interfered with Duvalt's previously-prescribed treatment by leaving his condition untreated from the time Duvalt entered SICI until the time he was evaluated by the staff psychiatrist. However, by Duvalt's own admission, such interference terminated when Duvalt was examined by the psychiatrist and prescribed Thorazine. Although Duvalt was denied Ritalin, which was his preferred course of treatment, he was not denied treatment altogether. Duvalt was examined by a psychiatrist who prescribed an alternative form of medication to Ritalin. After that point, Duvalt's allegation that he was receiving inadequate medical care consisted of his disagreement with the course of treatment proposed by the staff psychiatrist. Duvalt's disagreement with and refusal to participate in such treatment was insufficient to establish a continuing Eighth Amendment violation. Because there was no genuine issue of material fact and Duvalt failed to establish a continuing Eighth Amendment violation, we hold that the district court did not abuse its discretion by dismissing Duvalt's petition for writ of habeas corpus on the ground that Duvalt received constitutionally inadequate medical care.

**2. Estoppel**

While Duvalt was awaiting sentencing and confined at the Bonneville County jail, staff there refused to prescribe Ritalin to treat his condition pursuant to the jail's internal administrative policy. The sentencing court issued an order directing the jail staff to provide Duvalt with Ritalin, as Duvalt's competency was compromised by the failure to treat his ADHD and Ritalin was the preferred medication for Duvalt's condition. In addition, the sentencing court ordered Duvalt's psychiatrist to re-evaluate Duvalt's mental condition thirty days from the date Duvalt was provided with Ritalin.

---

1. We note that Duvalt was examined by the psychiatrist and prescribed Thorazine prior to the filing of his habeas corpus petition.

On appeal, Duvalt asserts that the department and, particularly, the staff at SICI were bound by the sentencing court's order to treat his condition with Ritalin. Duvalt further argues that SICI and the department were estopped from denying that they were so bound. Duvalt's argument is without merit. The sentencing court's order was a temporary order directed to the staff at the Bonneville County jail, designed to address the immediate concern of maintaining Duvalt's competency during the proceedings before the sentencing court. The order was plainly not intended to be effective indefinitely nor was it intended to apply to an entity other than the Bonneville County jail. Accordingly, we hold that the department and the staff at SICI were not bound by the order of the sentencing court authorizing treatment of Duvalt with Ritalin.

Duvalt additionally asserts that the department and the staff at SICI were estopped from denying that they were bound by the terms of his I.C.R. 11 plea agreement with the state. One of the terms of Duvalt's plea agreement was that, as a condition of probation, Duvalt was to obtain "mental health counseling and case management to assist in obtaining funding for medications as recommended by [Duvalt's psychiatrist] and prescribed by [Duvalt's physician]." Clearly, the term asserted by Duvalt as binding upon the department and SICI was actually a term of probation that he, not the state, agreed to comply with. Thus, we conclude that Duvalt's argument is without merit.

### B. Parole Hearing

#### 1. Entitlement to a parole hearing

■■■■ Duvalt was sentenced to a unified term of seven years, with a minimum period of confinement of one and one-half years, and given credit for time served. Duvalt's sentence was suspended, and he was placed on probation for a period of three years. Duvalt subsequently violated his probation. Duvalt's probation was revoked and his suspended sentence was ordered into execution. By the time he arrived at SICI in February 2001, Duvalt had served most or all of his

fixed term while in jail as a consequence of violating his probation. Pursuant to its policy, the commission refused to consider Duvalt for parole until August 2001, after Duvalt had served six months at SICI.[2] On appeal, Duvalt complains that his right to due process was violated by the commission's refusal to consider him for parole until September, despite his eligibility prior to that time.

■■■■ There is no constitutionally protected right to parole. *Hays v. Craven*, 131 Idaho 761, 764, 963 P.2d 1198, 1201 (Ct.App. 1998). The United States Supreme Court has held that, to obtain a protectable right, "a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548, 561 (1972). The Idaho Supreme Court has concluded that Idaho statutes do not provide a legitimate expectation of parole, but merely the possibility thereof. *Izatt v. State*, 104 Idaho 597, 600, 661 P.2d 763, 766 (1983). If there is no constitutionally protected liberty interest in receiving parole, it follows that there can be no constitutionally protected liberty interest in having a parole hearing immediately upon becoming parole-eligible.

In addition, it can be expected that some inmates, like Duvalt, arrive at our state's correctional facilities parole-eligible or become eligible shortly after arrival. The commission requires time to evaluate such a parole-eligible inmate in order to determine whether to grant or deny parole. Pursuant to I.C. § 20–224, the board of correction and the commission are granted six months from the time an inmate is admitted at a correctional facility to secure all pertinent information regarding the inmate, including the circumstances of the inmate's offense, his or her previous social history and criminal record, his or her conduct, employment and attitude in prison, and any reports of physical or mental examinations of the inmate. The

---

**2.** Because the commission was scheduled to conduct hearings at a different correctional facility during August, Duvalt's parole hearing was set for September.

commission uses that information, as well as any other relevant information gathered concerning the inmate, in making a parole decision concerning the inmate and in formulating a plan or program to assist the inmate in succeeding on parole.

The Idaho appellate courts have held that the information gathered and relied upon by the commission must provide a rational basis for the commission's decision concerning an inmate's parole. *See Ybarra v. Dermitt,* 104 Idaho 150, 151, 657 P.2d 14, 15 (1983); *Vittone v. State,* 114 Idaho 618, 620, 759 P.2d 909, 911 (Ct.App.1988). Duvalt has not shown that the six-month time period provided for by I.C. § 20–224 is unreasonable or that it is not rationally based in its application.

Because Duvalt has failed to establish that he had a constitutionally protected liberty interest in receiving a parole hearing as soon as he became parole-eligible and because the commission is statutorily allotted six months in which to gather information relevant to its decision on whether to grant or deny parole to an inmate, we conclude that Duvalt's right to due process was not violated by the commission's refusal to consider him for parole until he had served six months at SICI. Accordingly, we hold that the district court did not abuse its discretion by dismissing Duvalt's petition for writ of habeas corpus in that regard.

### 2. Ex post facto and bill of attainder laws

Duvalt additionally argues that the commission's rule requiring him to serve six months in SICI before holding a parole hearing constituted either an unlawful bill of attainder or ex post facto legislation. An unlawful bill of attainder has been defined as a legislative act that applies to named individuals or easily ascertainable members of a group in such a way as to inflict punishment upon them without a judicial trial. *See United States v. Brown,* 381 U.S. 437, 448–49, 85 S.Ct. 1707, 1714–15, 14 L.Ed.2d 484, 491–92 (1965). Here, the commission's six-month rule did not inflict punishment on Duvalt. Further, the rule applied to Duvalt only after he pled guilty to his underlying offense and

was sentenced. The bill of attainder doctrine has no application to the present case.

The ex post facto prohibition forbids Congress and states from enacting any law which imposes a punishment for an act which was not punishable at the time it was committed or imposes additional punishment to that then prescribed. *Weaver v. Graham,* 450 U.S. 24, 28, 101 S.Ct. 960, 964, 67 L.Ed.2d 17, 22 (1981). Ordinarily when a court engages in an ex post facto analysis, it is concerned solely with whether a law assigns more disadvantageous criminal or penal consequences to an act than did the law in place when the act occurred. *Id.* at 29 n. 13, 101 S.Ct. at 964–65, 67 L.Ed.2d at 23.

Duvalt claims that the commission's six-month rule unlawfully increased his minimum period of confinement from eighteen months to twenty-seven months. However, Duvalt has not demonstrated in the record that the commission's six-month rule was put into effect *after* his offense and thereafter used against him. Further, even assuming that the six-month rule was promulgated after Duvalt's offense, a regulatory change by the commission in the timing for review of an inmate's eligibility for parole does not give rise to a claim that the alteration violates the constitutional restriction against ex post facto laws. *See Freeman v. Comm'n of Pardons and Paroles,* 119 Idaho 692, 697–98, 809 P.2d 1171, 1176–77 (Ct.App.1991). Therefore, Duvalt has failed to show that the commission's rule constituted ex post facto legislation.

### III.

### CONCLUSION

With respect to Duvalt's claims concerning his medical treatment at SICI, we conclude that Duvalt's assertion that he received constitutionally inadequate medical care at SICI fails because Duvalt was treated for his medical condition by the staff at SICI, and his allegation constituted a disagreement with the staff psychiatrist over the proper course of treatment. Additionally, we conclude that the department and the staff at SICI were not bound by the sentencing court's order directing the Bonneville County jail staff to treat Duvalt with Ritalin. That order was a temporary order designed to address the

immediate concern of maintaining Duvalt's competency during the proceedings before the sentencing court. It was not intended to be effective indefinitely or to apply to an entity other than the Bonneville County jail. We also conclude that Duvalt's argument that the department and the staff at SICI were bound by the term in his plea agreement requiring mental health counseling and case management to assist in obtaining funding for Duvalt's medications was actually a condition of Duvalt's probation which he, not the state, agreed to comply with.

With respect to Duvalt's claims concerning his parole hearing, the commission was statutorily allowed six months in which to evaluate Duvalt's suitability for parole and Duvalt did not possess a constitutionally protected liberty interest in receiving parole. Further, Duvalt has failed to demonstrate that the commission's rule requiring Duvalt to serve six months at SICI before receiving his parole hearing constituted an unlawful bill of attainder or ex post facto legislation. Therefore, Duvalt's assertion that he was denied due process by the commission's failure to hold a parole hearing as soon as he became eligible for parole is without merit.

The order of the district court dismissing Duvalt's petition for writ of habeas corpus is affirmed.

Judge LANSING and Judge GUTIERREZ, concur.