163 P.3d 1215

Michael T. HAYES, Petitioner–Appellant,

v.

Jeff CONWAY, Warden, Idaho Correctional Center; Evelyn Hernandez, Deputy Warden, Idaho Correctional Center; Susan Bajovich, Medical Administrator, Idaho Correctional Center; and Dr. Huff, Dentist, Idaho Correctional Center, Respondents.

No. 33050.

Court of Appeals of Idaho.

June 14, 2007.

Review Denied Oct. 2, 2007.

Michael T. Hayes, Boise, pro se appellant.

Hon. Lawrence G. Wasden, Attorney General; Paul R. Panther, Deputy Attorney General; Naylor Hales, P.C., Boise, for respondents.

GUTIERREZ, Judge.

Michael T. Hayes appeals from the district court's dismissal of his petition for writ of *habeas corpus*. We affirm.

## I.

### FACTS AND PROCEDURE

In April 2004, Hayes was incarcerated under the jurisdiction of the Idaho Department of Corrections. He was given an initial dental exam which established he had a bridge spanning upper teeth numbers 3–12 and the presence of gingival disease and minimal calculus (tartar). At the time, when filling out his medical history, Hayes indicated his chief complaint was bleeding gums and that he had a heart condition, rheumatism, and arthritis. He also relayed that he often went longer than one day without brushing his teeth. Dr. Tim Huff, the dentist who would later examine him, indicated Hayes entered the Department of Corrections with generally poor oral health.

Later that month, Hayes was transferred to a facility operated by Idaho Correctional Center (ICC) where, on September 3, 2004, he submitted a Health Services Request form (HSR) complaining of a "severe gum infection." On September 7, he was seen by a nurse in the ICC medical department who referred him to a dental hygienist for an evaluation and recommendation as to course of treatment. The next day, Dr. Steven Garret, M.D. examined Hayes and requested that he be seen by a dentist. Also that day, Hayes was seen by a dental hygienist who took x-rays of several of his teeth, and Hayes submitted a second HSR requesting that his teeth be cleaned. He was notified by the dental office on September 9 that he was placed on a list to receive cleaning.

### A. Teeth Cleaning

On September 28, Dr. Garrett noted that Hayes was to have his teeth cleaned and that prior to the cleaning he should receive a dosage of amoxicillin due to his heart condition. Subsequently, on September 28, September 29, October 5, October 20, November 3, 2004, and January 25, 2005, Hayes missed scheduled cleaning appointments after arriving late. Hayes contends his tardiness was due to facility lockdowns and other security measures which interfered with his ability to reach the clinic. His late arrivals were especially problematic because amoxicillin must be taken at least an hour before cleaning commences. On March 23, 2005, Hayes's teeth were cleaned, and they were cleaned again on August 29, 2005. This time lapse between cleanings is in accordance with the standard of care given individuals with similar dental conditions outside the incarceration context. He will continue to be scheduled for cleaning every five to six months upon his request.

### B. Toothaches and Fillings

Also while incarcerated at ICC, Hayes complained of toothaches in teeth numbers 2, 14, and 15. On March 21, 2005, Hayes filed an HSR for "Dental Emergency tooth Pain" and during his cleaning several days later, complained to the hygienist that tooth number 15 was painful. X-rays were taken of teeth numbers 14 and 15. The next day, Dr. Huff examined Hayes and his x-rays and noted there were cavities in both teeth. However, there was no indication Hayes was in extreme pain, nor were there abscesses, bleeding, or swollen gums around the teeth and accordingly, Dr. Huff decided it was not a dental emergency and placed Hayes on the waiting list for dental treatment.

On May 23, 2005, Hayes filed an HSR complaining of tooth pain on both sides of his mouth. He was examined by Dr. Huff three days later, who noted that Hayes was now complaining of pain in tooth number 2 in addition to teeth numbers 14 and 15. Again, Dr. Huff determined there were no indications of a dental emergency and added Hayes to the waiting list for treatment on tooth number 2.

Hayes filed subsequent HSR's on August 8 and 12, 2005, continuing to complain about his teeth and inquire as to treatment for his pain. He was examined by Dr. Huff on August 12 and again determined not be suffering a dental emergency. Nevertheless, the dentist filled tooth number 2 before Hayes reached the top of the waiting list. On September 6 and 13, 2005, Hayes filed several HSR's in which he continued to complain of tooth pain. In response, on September 22, 2005, Dr. Huff filled teeth numbers 14 and 15, again before Hayes had reached the top of the treatment waiting list.

All three filled teeth are candidates for future root canals or extractions due to the depth of the decay and fillings. Because of significant complications which exist, Dr. Huff believes the long term prognosis for saving the teeth is "questionable at best." ICC policy disallows the administration of root canals for molars unless the treatment is medically necessary, and thus, since teeth numbers 2, 14, and 15 are molars for which Dr. Huff has determined root canals are not currently medically necessary, should the fillings fail, the teeth will be extracted. Such a procedure would require the removal of Hayes's bridge, a situation that is problematic because of his desire to maintain the bridge.[1]

## C. Access to Toothbrushes

Prior to the summer of 2005, Hayes had been purchasing new toothbrushes on a monthly basis, allegedly because they wore out. However, due to a security incident in another facility where a toothbrush was modified to make a weapon, toothbrushes were taken out of the ICC commissary for approximately two months during the summer of 2005 while a safer style of toothbrush was located. After not being able to purchase a new toothbrush for several weeks, on August 8, 2005 Hayes filed an HSR requesting one. A dental assistant responded to his request, notifying him the dental office did not give out toothbrushes and directing him to his unit sergeant. The sergeant would not supply him a toothbrush because he determined Hayes was not indigent. By the end of August 2005, Hayes was again able to purchase toothbrushes through the commissary.

## D. Front Tooth

Hayes has also experienced pain in a front tooth, number 8. A previous root canal on the tooth failed, and x-rays show there is no existing bone around the tooth. Dr. Huff believes the tooth would fall out if not for being under the bridge, but extraction of the tooth is problematic because it would be difficult to maintain the integrity of Hayes's bridge if it were removed to allow extraction of the tooth. Per ICC policy, if the bridge were to be damaged, Hayes would not receive a new one, but would be given alternate treatment to ensure he maintained his masticating ability. Hayes has expressed a desire to maintain the integrity of the bridge.

## E. *Habeas Corpus* Petition

On November 23, 2005, Hayes filed a petition for writ of *habeas corpus* alleging the respondents were deliberately indifferent to his dental care needs and thereby violated his Eighth Amendment rights.[2] The respondents filed a motion to dismiss and/or a motion for summary judgment. After briefing by the parties, the district court granted the motion for summary judgment and dismissed the petition. Hayes now appeals.

## II.

## ANALYSIS

In this case, the district court considered affidavits filed by Hayes, Dr. Huff, and Darold Breuer, the supervisor of ICC commissary, when it granted the motion to dismiss Hayes's petition for *habeas corpus* relief. When a court considers matters outside the pleadings, such motion must be treated

---

1. ICC policy 13–20.5.E says that fixed bridges are not to be fabricated and that crowns are not to be utilized except under unusual circumstances where adequate restoration cannot be achieved. Policy 13–20.5.B.6 allows for partial dentures to be given to an inmate when the inmate has insufficient teeth for masticating a normal diet, but policy 13–20.5.B.5 does not allow the provision of dentures for purely cosmetic purposes.

2. Specifically, Hayes requested the court grant the following relief:
 a. Order the Respondents to provide the dental care and treatment to the Petitioner that which will alleviate Petitioner's chronic toothache;
 b. Order the Respondents to provide the root canal that is necessary to save the Petitioner's upper permanent dental-plate;
 c. Order the Respondents to provide the dental care and treatment to treat the Petitioner's periodontal gum disease;
 d. Order the Respondents to provide the Petitioner with a proper toothbrush that will address Petitioner's dental care and treatment of his teeth; and,
 e. Order the Respondents to provide the Petitioner with dental floss that will address the Petitioner's dental care and treatment....

as a motion for summary judgment. *Duvalt v. Sonnen,* 137 Idaho 548, 552, 50 P.3d 1043, 1047 (Ct.App.2002); *Hellickson v. Jenkins,* 118 Idaho 273, 276, 796 P.2d 150, 153 (Ct. App.1990). Summary judgment under Idaho Rule of Civil Procedure 56(c) is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. On appeal, we exercise free review in determining whether a genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law. *Duvalt,* 137 Idaho at 552, 50 P.3d at 1047; *Edwards v. Conchemco, Inc.,* 111 Idaho 851, 852, 727 P.2d 1279, 1280 (Ct.App.1986). When assessing a motion for summary judgment, all controverted facts are to be liberally construed in favor of the nonmoving party. Furthermore, the trial court must draw all reasonable inferences in favor of the party resisting the motion. *G & M Farms v. Funk Irrigation Co.,* 119 Idaho 514, 517, 808 P.2d 851, 854 (1991); *Duvalt,* 137 Idaho at 552, 50 P.3d at 1047; *Sanders v. Kuna Joint School Dist.,* 125 Idaho 872, 874, 876 P.2d 154, 156 (Ct. App.1994).

■■■ The appropriate inquiry when an inmate alleges that prison officials failed to attend to a serious medical need is whether the officials exhibited deliberate indifference. *Hudson v. McMillian,* 503 U.S. 1, 5, 112 S.Ct. 995, 998, 117 L.Ed.2d 156, 164 (1992); *Duvalt,* 137 Idaho at 552, 50 P.3d at 1047; *Clemens v. State,* 112 Idaho 638, 639, 733 P.2d at 1263, 1264 (Ct.App.1987). A determination of deliberate indifference involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the prison's response to that need. *See United States ex rel. Walker v. Fayette County, Pennsylvania,* 599 F.2d 573, 575 (3d Cir.1979). Serious medical needs include those diagnosed by a physician as mandating treatment or those that are so obvious even a lay person would easily recognize the necessity for a doctor's attention. *Duvalt,* 137 Idaho at 552, 50 P.3d at 1047.

■■■ To establish deliberate indifference in a prison's response to an inmate's serious medical need, there must have been a purposeful act or failure to act on the part of prison officials. *Estelle v. Gamble,* 429 U.S. 97, 103–04, 97 S.Ct. 285, 290–91, 50 L.Ed.2d 251, 259–60 (1976); *Duvalt,* 137 Idaho at 552, 50 P.3d at 1047. Although an inmate is not constitutionally guaranteed treatment at the level demanded by him or her, *State v. Clay,* 124 Idaho 329, 332, 859 P.2d 365, 368 (Ct. App.1993), the failure to respond to a known medical problem can constitute deliberate indifference. *See Estelle,* 429 U.S. at 103–04, 97 S.Ct. at 290–91, 50 L.Ed.2d at 259–60; *Rogers v. Evans,* 792 F.2d 1052, 1058 (11th Cir.1986). Deliberate indifference may also be manifested by intentional delay in access to medical care or by intentional interference with a prisoner's treatment once prescribed. *Estelle,* 429 U.S. at 104–05, 97 S.Ct. at 291–92, 50 L.Ed.2d at 260–61; *Duvalt,* 137 Idaho at 552, 50 P.3d at 1047. In order to establish deliberate indifference, however, a petitioner must demonstrate that his or her claim is based on more than a disagreement with the treating physician regarding the appropriateness of professional treatment received. *Duvalt,* 137 Idaho at 553, 50 P.3d at 1048; *Clemens,* 112 Idaho at 639–40, 733 P.2d at 1264–65.

It is undisputed that Hayes's periodontal disease is a serious medical condition. Thus, the key inquiries are whether ICC's response to his condition amounted to deliberate indifference and whether Hayes is entitled to the injunctive relief he requests. Hayes contends ICC did exhibit deliberate indifference, pointing generally to a lack of proper treatment and more specifically to his allegations that he was not seen by a dentist for approximately five and one-half months from his initial dental complaint, thus contributing to the progression of his periodontal disease, that Dr. Huff has failed to render further treatment since, and that he was deprived of a toothbrush for three months. He alleges the fact he continues to suffer pain from "tooth No. 8," which has yet to be remedied by medical personnel, amounts to deliberate indifference as to treatment of his medical issues. Arguing that ICC's failure to promptly address his dental complaints caused the progression of his periodontal disease, specifically the destruction of "tooth No. 8," Hayes requests that we order ICC to

address that tooth's health in a manner requiring it to subsequently replace his bridge, a procedure that is against ICC policy.

 Initially, we note that several issues Hayes raises are moot in regards to the relief he requests, because they have already been addressed by ICC. To be justiciable, an issue must present a real and substantial controversy that is capable of being concluded through a judicial decree of specific relief. *Freeman v. Id. Dept. of Correction,* 138 Idaho 872, 875, 71 P.3d 471, 474 (Ct.App.2003). If the questions presented are no longer live and if the parties lack a legally cognizable interest in the outcome, those issues are not justiciable, but are moot and therefore preclude review. *Id.* A party lacks a legally cognizable interest in the outcome when even a favorable judicial decision would not result in relief. *Id. (citing Murphy v. Hunt,* 455 U.S. 478, 481–82, 102 S.Ct. 1181, 1183–84, 71 L.Ed.2d 353, 356–57 (1982)).

 Accordingly, Hayes's contention that he was deprived of a toothbrush for a period of time amounting to deliberate indifference that worsened his condition is moot. While there was a less than a three-week period between mid-July and August 2005 when a new toothbrush was not available to him when he desired it, as of late August 2005 his access to toothbrushes was restored and thus there exists no continuing deprivation. In other words, a favorable judicial decision would provide Hayes with no more relief than he has already received.

 Hayes also references what he perceives as delays in treating cavities in teeth numbers 2, 14, and 15. However, as the district court pointed out, Hayes was examined by dental staff on at least eight occasions beginning in March 2005 despite the fact that the average waiting time to be seen by a dentist at the facility was five to six months. During this period, he had those three teeth filled and upon a doctor's determination that his condition did not constitute a medical emergency, was placed on a waiting list for further treatment in accordance with the standard practice at ICC. Thus, the cavities which he complains were neglected

have been remedied by the fillings and this issue is likewise moot.

 Consequently, the only true point of contention is ICC's response to Hayes's remaining dental complaint—the deterioration of tooth number 8—and we are convinced the lower court was correct in finding that ICC's treatment of Hayes did not amount to deliberate indifference. In regards to tooth number 8, the course of treatment Hayes requests this court order would result in Hayes likely losing his dental bridge and some existing crowns. However, ICC policy prevents Dr. Huff from replacing these structures and given this information, Hayes expressed a wish to keep the bridge and crown intact as opposed to accepting an alternate course of treatment, which in this case would result in either large gaps in his teeth or dentures. Thus, Hayes asks that we order ICC to proceed in accordance with his treatment wishes (including replacing the bridge and crowns) when alternate avenues of care exist and have been afforded to him. This is largely a dispute about course of treatment, an issue which the *Duvalt* court and others specifically rejected as a basis for *habeas corpus* relief. *See Duvalt,* 137 Idaho at 553, 50 P.3d at 1048. Far from deliberate indifference, the record shows that prison medical and dental personnel actively responded to his complaints and proceeded with a course of action in accordance with Hayes's wishes as limited by ICC policy. That Hayes did not receive, as quickly as he preferred, the services he desired due to a conflict between his goals and prison policy does not entitle him to *habeas corpus* relief where the record shows his condition was treated by ICC medical personnel on a regular and thorough basis. This is simply not an instance where there existed an indifference to treatment of a serious medical need, but rather an occasion where Hayes has rejected the offered adequate treatment because he wishes different and much more costly treatment. That tooth number 8 has not been extracted is the result of Hayes's decision not to endanger the integrity of his bridge and not a refusal on the part of ICC to treat the problem at all.

Ultimately, there is no evidence aside from Hayes's bare assertions that prison officials exhibited deliberate indifference in regards to tooth number 8, the sole justiciable issue presented in this case. Instead, even construing facts in the light most favorable to Hayes, what emerges is an instance of disparate ideas regarding the course of treatment of his periodontal disease in that tooth. Thus, Hayes has not shown the lower court erred by concluding there did not exist a material issue of fact regarding deliberate indifference on the part of ICC and accordingly, we affirm the district court's order granting of summary judgment dismissing his *habeas corpus* petition.

Chief Judge PERRY and Judge LANSING concur.