# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 48053

In the Matter of Application for Writ of
Habeas Corpus.

--------------------------------------------------

NOVA MARIE WILLIAMS, CHLOE
REANNEN WAGER, ROSE MARIE FEW,
JOY LYNN KIRKLAN, ALEXIS ALYCE
MOON, BARBARA SIGRID WARREN,
JESSICA MARIE KIBE, AMBER RENEE
DESCHENE, ASHLEY RAE ASHCRAFT,
JESSE RICHARD PEDROZA, BRANDON
JACOB RABER, ANTHONY ALLEN
COFFEY, PATRICK LEE CARNEY,
KENNETH W. DAUGHTRY, OMAR
MARTINEZ JUAREZ, WILLIAM JOHN
HAMILTON, BEAU ALAN MICHEL,
CODY JOHN JAMES BUTTERFIELD,
CAMERON WILSON, ABNER MIZAEL G.
MOTEPEQUE, DOUGLAS BUTLER
PHILLIPS, RANDALL LEE SANTERO,
BRANDON LEE NETHERTON, DAZIE
JOE OLSEN, JOSHUA MICHAEL
ANDERSON, BRANDON MCMILLAN,
BRYAN RIGGS, MICHAEL ELTON
MCCARROLL, ALEX MICHAEL LITZ,
RYAN MICHAEL DIETRICH, GAVIN
CORDELL MILAND, ISAIAH
MCKENDRICK BELL, RICK EUGENE
WEAVER, EMIL MERCADO, MICHAEL
MCDONOUGH, MICHAEL ALEXANDRA
DEAN, WILLIAM MYLES, AMOS
COOMBS, MICHAEL DUMAS, JOHN
MCKAY, ALFRED BOWERS, JR., JESUS
LOPEZ, and BRETT ROGERS,

    Petitioners-Appellants,

v.

MIKE HOLLINSHEAD, Sheriff of Elmore
County; and SHAUNA GAVIN,
Administrator of the Elmore County Jail,

Boise, September 2020 Term

Opinion Filed: November 2, 2020

Melanie Gagnepain, Clerk

1

**Respondents.**

)
)
)
)

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Elmore County. James S. Cawthon, District Judge.

The district court's order granting summary judgment is <u>affirmed</u>.

Petersen Moss Hall & Olsen, Idaho Falls, for appellants. Nathan Olsen argued.

Daniel Page, Elmore County Prosecuting Attorney, Mountain Home, for respondents. Ralph Blount argued.

_____

BRODY, Justice.

This appeal concerns a group of prisoners ("Petitioners") seeking a writ of habeas corpus based on the conditions of their confinement during the COVID-19 pandemic. The Petitioners are all incarcerated at the Elmore County Jail ("Jail"). They contend their conditions of confinement constitute cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution. More specifically, the Petitioners assert they are in imminent danger because officials at the Jail have not implemented any discernable mitigation measures in response to the COVID-19 pandemic. Elmore County Sheriff Mike Hollinshead and Lieutenant Shauna Gavin (collectively "Officials") deny this assertion. Furthermore, the Officials contend that the Petitioners' request for a writ of habeas corpus should be denied because the Petitioners have not exhausted their administrative remedies. The Officials filed a motion for summary judgment with the district court, which was granted. The district court also awarded the Officials their attorney fees. The Petitioners timely appealed the district court's decisions to this Court, which agreed to hear the appeal on an expedited basis. We affirm the district court's decision granting summary judgment, but we reverse the district court's award of attorney fees.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Nine female prisoners incarcerated in the Jail filed a petition seeking a writ of habeas corpus with this Court on April 3, 2020. This Court subsequently transferred the matter to the Elmore County district court. The district court consolidated the case with a related case involving another petition seeking a writ of habeas corpus filed by a group of male prisoners

2

incarcerated at the Jail. Thus, the case now includes two petitions involving 43 male and female prisoners. The district court heard the case on an expedited basis.

The Petitioners contend their conditions of confinement at the Jail are not safe due to the COVID-19 pandemic. The Petitioners assert that "[n]o detectable measures have been taken to protect the [P]etitioners since the outbreak of the COVID-19 [pandemic]." Consequently, the Petitioners argue they "are confronted with a situation of imminent and extreme threat to their health . . . that demands immediate and substantive action." The Petitioners reference documents issued by the Centers for Disease Control and Prevention and the American Correctional Association that provide guidelines for addressing COVID-19 in correctional facilities to support their argument, claiming the Officials are not adhering to these guidelines. The Petitioners contend that the "current conditions of confinement constitute a clear and present violation of the Eighth Amendment of the U.S. Constitution banning cruel and unusual punishment." Consequently, they seek a writ of habeas corpus to provide injunctive relief.

The Jail has promulgated an administrative grievance process for prisoners. The administrative grievance process includes four steps: (1) a prisoner should communicate the grievance to a Jail staff member; (2) if the prisoner is unsatisfied with the response at step one, the prisoner should communicate the grievance to a Jail shift supervisor; (3) if the prisoner is unsatisfied with the response at step two, the prisoner should submit a written grievance to the Jail administrator; and, (4) if the prisoner is unsatisfied with the response at step three, the prisoner should file an appeal with the Jail administrator within ten days. In order to determine if the Petitioners had complied with the Jail's administrative process, the district court issued an Order to Show Exhaustion of Remedies or Applicability of Exception. The Petitioners filed a response to the district court's order that included handwritten statements from some of the Petitioners describing their concerns regarding the conditions at the Jail and what steps they had taken, if any, to resolve those concerns. The statements are unsworn and, in some instances, unsigned or undated. Some of the Petitioners utilized step one or step two of the administrative grievance process. Furthermore, one Petitioner filed a written grievance, as required by step three of the administrative grievance process. There have been no appeals, however, to the Jail administrator under step four of the administrative grievance process.

During the course of the proceedings below, the Petitioners sought certain records from the Officials. More specifically, the Petitioners sought a record dated March 17, 2020, that

contained a list of inmates that could potentially be released early in response to the COVID-19 pandemic. The Petitioners also sought any additional records related to the May 17, 2020, record. The Officials treated the request as a request for public records and provided several redacted documents to the Petitioners. The Petitioners objected to the redactions and filed a motion for discovery with the district court. The Petitioners also sought sanctions against the Officials. The motion for discovery was filed approximately one week after the Officials had moved for summary judgment. The district court denied the motion for discovery, noting that discovery in a habeas corpus proceeding is discretionary and allowed only if necessary to protect or defend a substantive state or federal constitutional right. The district court explained its reasoning why discovery was not necessary in this instance, noting that the Petitioners had already received the May 17, 2020, record they sought.

The Officials filed a motion for summary judgment with the district court several days prior to the Petitioners' motion for discovery, arguing that the Petitioners had failed to exhaust administrative remedies. The Officials also asserted the Petitioners had failed to raise a genuine issue of material fact upon which relief may be granted. The Officials asserted the Petitioners had "failed to demonstrate that each petitioners' state or federal constitutional rights may have been violated relative to 'conditions of confinement' or any other grounds cognizable under the Idaho Habeas Corpus and Institutional Litigation Procedures Act."

The Petitioners responded by arguing, in part, that they had followed the Jail's administrative procedures by lodging some verbal complaints and one written complaint. The Petitioners also asserted they were not required to exhaust administrative remedies because they face an imminent threat from the COVID-19 pandemic and, as such, qualify for an exception to the exhaustion requirement. Additionally, the Petitioners argued for the first time that, "in addition to the threat of the COVID-19 [pandemic], the [P]etitioners' right to due process, i.e.[,] a timely resolution of their claims and access to the courts[,] has been detrimentally affected." Namely, the Petitioners argued that "the Idaho Supreme Court's emergency order restricting court activities, as amended, has resulted in substantial delays in the processing of the prisoners/detainees' claims." Finally, the Petitioners asserted the Officials had not shown cause why the petition for habeas corpus should not be granted, arguing that the Officials bear this burden.

4

The district court issued its memorandum decision on May 18, 2020. The district court granted summary judgment, holding that the Petitioners had failed to exhaust their administrative remedies as required by Idaho Code section 19-4206, and that they did not qualify for an exception. The district court also held that even if the Petitioners had exhausted their administrative remedies or qualified for an exception, there is "no genuine issue of material fact and the [Officials] are entitled to judgment as a matter of law, as to any assertion in this proceeding that the [Officials'] actions in response to the COVID-19 virus, constituted deliberate indifference or the imposition of punishment." Finally, the district court held that the proceeding was brought frivolously and awarded the Officials their attorney fees.

The Petitioners filed a notice of appeal four days after the district court issued its decision. This Court granted the Petitioners' request to expedite the appeal pursuant to Idaho Appellate Rule 44.

## II. STANDARD OF REVIEW

A habeas corpus proceeding is a civil action and the Idaho Rules of Civil Procedure generally apply. I.C. § 19-4208. When reviewing a ruling on a motion for summary judgment, this Court utilizes the same standard that was employed by the trial court. *Eldridge v. West*, 166 Idaho 303, 308, 458 P.3d 172, 177 (2020). "The court must grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." I.R.C.P. 56(a). The burden of establishing the absence of a genuine issue of material fact rests with the movant. *Id.* "When assessing summary judgment on a habeas corpus petition, [an appellate court will] treat all uncontroverted allegations in the petition as true, and . . . liberally construe all controverted facts and draw all reasonable inferences in favor of the nonmoving party." *Drennon v. Craven*, 141 Idaho 34, 36, 105 P.3d 694, 696 (Ct. App. 2004). If the movant demonstrates the absence of a question of material fact, the burden shifts to the nonmoving party to demonstrate an issue of material fact exists. *Eagle Springs Homeowners Ass'n, Inc. v. Rodina*, 165 Idaho 862, 868, 454 P.3d 504, 510 (2019). The nonmoving party must present evidence that contradicts the evidence submitted by the movant. *Id.* A mere scintilla of evidence is not adequate to create a genuine issue of material fact. *Id.* Furthermore, the nonmoving party in a habeas corpus proceeding may not rely on mere allegations contained in the pleadings; rather, the nonmovant must present evidence to establish

specific facts showing there is a genuine dispute. *Quinlan v. Idaho Comm'n for Pardons & Parole*, 138 Idaho 726, 729, 69 P.3d 146, 149 (2003).

### III. ANALYSIS

The writ of habeas corpus—sometimes referred to as the Great Writ—holds a revered place in the history of the common law and our nation. *See* Dallin H. Oaks, *Habeas Corpus in the States: 1776-1865*, 32 U. Chi. L. Rev., 243 (1965) (describing the history of the writ of habeas corpus and how it evolved into the Great Writ); *see also* Neil Douglas McFeeley, *The Historical Development of Habeas Corpus*, 30 Sw. L.J. 585 (1976) (describing the origins of the Great Writ). "Throughout the centuries the Great Writ has been the shield of personal freedom insuring liberty to persons illegally detained." *Smith v. Bennett*, 365 U.S. 708, 714 (1961). The writ of habeas corpus continues to serve that same crucial purpose today. Thus, we approach our analysis accordingly.

The Petitioners contend that the district court erred when it denied their motion for discovery, awarded summary judgment in favor of the Officials, and awarded attorney fees to the Officials. Although we hold that the district court erred when it awarded attorney fees to the Officials, it did not err when it denied the Petitioners' motion for discovery and awarded summary judgment in favor of the Officials.

### A. The district court did not err when it denied the Petitioners' motion for discovery.

The Petitioners assert that the district court erred when it denied their motion for discovery. Specifically, the Petitioners argue that the district court abused its discretion when it did not allow the Petitioners to discover potentially relevant information that was raised in connection with the Officials' motion for summary judgment. We disagree.

When reviewing an alleged discovery error in a habeas corpus action, we review the trial court's decision for an abuse of discretion. *Storm v. Spaulding*, 137 Idaho 145, 149, 44 P.3d 1200, 1204 (Ct. App. 2002). To do this, we assess "[w]hether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

Discovery is not typically permitted in a habeas corpus action. I.C. § 19-4210(1). However, "[i]f factual issues are raised by the pleadings, the court may, upon motion, grant leave

for discovery in accordance with Idaho [R]ules of [C]ivil [P]rocedure." I.C. § 19-4210(3)(a). "If the court finds that discovery is necessary to protect or defend a substantive state or federal constitutional right at issue, it shall enter an order tailored to allow discovery for that limited purpose." I.C. § 19-4210(3)(b).

Here, the Petitioners sought a record dated March 17, 2020, which contained a list of prisoners at the Jail who could potentially be released early in response to the COVID-19 pandemic. The Petitioners also sought any additional records related to the May 17, 2020, record. The Officials treated the request as a request for public records and provided several redacted records to the Petitioners. The Petitioners objected to the redactions and filed a motion for discovery.

The district court denied the motion for discovery, noting that the Petitioners had already been provided with the May 17, 2020, record they were seeking. Thus, the district court reasoned that no showing had been made that discovery was necessary to protect or defend a substantive constitutional right. The district court also determined that the Petitioners' arguments in support of discovery were largely based on speculation.

There is no room for dispute that the district court satisfied the first three prongs of this Court's abuse of discretion test. *Lunneborg*, 163 Idaho at 863, 421 P.3d at 194. The only real issue is whether the district court reached its decision through the exercise of reason. Here, the Petitioners had already received the May 17, 2020, record they were seeking. Furthermore, the May 17, 2020, document did not include any substantive redactions. Thus, the district court reasoned that discovery was not necessary to protect or defend a constitutional right. The district court also noted that "the [P]etitioners have not specified in their motion what 'related correspondence and documents' to the March 17, 2020 'letter' they seek, nor have they specified how th[e] 'related correspondence and documents' will assist them in protecting or defending a state or federal constitutional right at issue." Furthermore, the district court stated that the Petitioners' "other arguments for discovery appear to be essentially based upon speculation. . . . [W]hile they reference an email citing jail COVID-19 policies, there is already evidence in the record concerning the jail's COVID-19 policies and procedures."

Because the district court reached its decision through the exercise of reason, we hold that the district court did not abuse its discretion when it denied the Petitioners' motion for discovery.

**B. The district court did not err when it granted summary judgment in favor of the Officials.**

The district court granted summary judgment under Idaho Rule of Civil Procedure 56 on two bases. First, the district court held that the Petitioners had not exhausted their administrative remedies, nor were they excused from doing so due to imminent danger. Second, the district court held that there is no genuine issue of material fact as to whether the Officials' actions in regards to the COVID-19 pandemic constitute deliberate indifference or the imposition of a cruel or unusual punishment.

Initially, we note that the Officials filed a motion to dismiss under Idaho Rule of Civil Procedure 12 just days after the female Petitioners filed their petition for a writ of habeas corpus. The Officials argued, in part, that the Petitioners had failed to state a claim upon which relief could be granted because the Petitioners had failed to exhaust administrative remedies. The Officials also asserted that the Petitioners were not excused from exhausting administrative remedies because the Petitioners were not in imminent danger. To evaluate the Officials' motion to dismiss, the district court issued an Order to Demonstrate Exhaustion of Remedies or Applicability of Exception. The Petitioners responded to the district court's order by filing a supplemental brief and a declaration from their attorney ("April declaration").

The April declaration included two news articles concerning the COVID-19 pandemic and its impact on jails in Bannock County, Idaho, and Chicago, Illinois. The news articles do not directly pertain to conditions of confinement at the Jail. Next, the April declaration included copies of two letters from the Sheriff of Ada County pertaining to the COVID-19 pandemic and its impact on the jail in that county. The letters do not directly concern conditions of confinement at the Elmore County Jail. Lastly, the April declaration included unsworn statements from some of the Petitioners describing their concerns about the COVID-19 virus and their conditions of confinement. The Petitioners' concerns, as they relate to the COVID-19 pandemic, include: 1) the desire for more supplies, such as hand soap, face masks, and cleaning supplies; 2) the inability to maintain social distancing; 3) unsanitary conditions in some parts of the Jail, such as mold in the showers and bodily fluids in the recreation yard, that may lead to health problems; 4) concerns about the potential impact of the COVID-19 virus on older prisoners and prisoners with pre-existing health conditions; and, 5) delays in court proceedings associated with the COVID-19 pandemic. However, the Petitioners' statements were not made under penalty of perjury, and, in some cases, the statements were unsigned or undated.

8

Five days after the Petitioners filed the April declaration, the Officials filed a motion for summary judgment. Consequently, the district court incorporated the motion to dismiss with the motion for summary judgment. *See D.A.R., Inc. v. Sheffer*, 134 Idaho 141, 143, 997 P.2d 602, 604 (2000) ("If, on a motion asserting failure to state a claim upon which relief can be granted, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 . . . ."); *see also* I.R.C.P. 12(d).

### 1. The Petitioners did not satisfy the standard for submitting evidence on summary judgment.

This Court has made it clear how a summary judgment motion is to be opposed by a nonmoving party:

> When considering evidence presented in . . . opposition to a motion for summary judgment, a court can only consider material which would be admissible at trial. As a rule, supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.

*Union Bank, N.A. v. JV L.L.C.*, 163 Idaho 306, 314, 413 P.3d 407, 415 (2017) (quoting *Taft v. Jumbo Foods, Inc.*, 155 Idaho 511, 515, 314 P.3d 193, 197 (2013)); *see also Gem State Ins. Co. v. Hutchison*, 145 Idaho 10, 14, 175 P.3d 172, 176 (2007) (stating that a court can only rely on evidence that is admissible at trial when considering evidence in opposition to a motion for summary judgment); *see also Losee v. Deutsche Bank Nat'l Tr. Co.*, 165 Idaho 883, 886, 454 P.3d 525, 528 (2019) (stating that a court can only consider material which would be admissible at trial when ruling on a motion for summary judgment). Consequently, "[u]nsworn statements are entitled to no probative weight in passing on motions for summary judgment." *Camp v. Jiminez*, 107 Idaho 878, 882, 693 P.2d 1080, 1084 (Ct. App. 1984).

This Court's holdings that a party opposing summary judgment must provide evidence that would be admissible at trial are consistent with Idaho Rule of Civil Procedure 56(c). Idaho Rule of Civil Procedure 56(c)(1)(A) states that a party opposing summary judgment must cite to specific materials in the record, including affidavits or declarations. Further, an affidavit or declaration "used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." I.R.C.P. 56(c)(4).

9

We note that Idaho law now enables individuals to easily file a declaration that is the equivalent of an affidavit. *See* I.C. § 9-1406. The individual need only declare that the statement is true and correct, and that it is made under penalty of perjury. *Id.* Notwithstanding this lenient standard, the Petitioners here failed to file declarations under penalty of perjury. Consequently, the Petitioners' unsworn statements are entitled to "no probative weight" when assessing the Officials' motion for summary judgment. *Camp*, 107 Idaho at 882, 693 P.2d at 1084.

**2. The Petitioners did not demonstrate they were excused from exhausting administrative remedies.**

The Petitioners did not exhaust their administrative remedies as required by Idaho law. I.C. § 19-4206(1). The Petitioners argue, however, they are excused from exhausting administrative remedies because the COVID-19 pandemic constitutes an imminent danger of serious physical injury. Thus, they contend the district court erred when it granted summary judgment on this basis. We disagree.

Generally, a petition seeking a writ of habeas corpus pertaining to conditions of confinement may not be brought until all administrative remedies have been exhausted. I.C. § 19-4206(1). However, there are two exceptions to this general rule. First, if a correctional facility has not implemented a system for administrative remedies, the requirement to exhaust administrative remedies is waived. I.C. § 19-4206(2). Second, an individual is excused from the requirement to exhaust administrative remedies if she is able to demonstrate to the district court's satisfaction that she is in imminent danger. I.C. § 19-4206(1).

The record shows that the Jail has an administrative grievance process in place. Thus, the first exception is not applicable here. Therefore, the only remaining question is whether the Petitioners are excused from the requirement to exhaust administrative remedies because they have satisfactorily demonstrated they are in imminent danger.

The Petitioners make several arguments in an effort to demonstrate they are in imminent danger. First, the verified petitions filed by the Petitioners include a number of general assertions regarding the COVID-19 virus and its potential impact on individuals incarcerated in the Jail. The Petitioners assert, for example, that they are at risk of contracting COVID-19 because it is not feasible to practice social distancing in the Jail; they must share toilets and showers; they do not have sufficient access to cleaning supplies; and they do not have sufficient access to free soap. The Petitioners assert that "[n]o detectable measures have been taken to protect the [P]etitioners since the outbreak of the COVID-19 [pandemic]." The Petitioners also assert that

10

they "have received no health or screening measures to check for symptoms of COVID-19." As explained below, many of these assertions are not supported by the record. Further, even if the assertions were supported by the record, they do not rise to the level of "imminent danger." I.C. § 19-4206(1). Rather, the concerns are prospective and speculative. We also note that the nonmoving party in a habeas corpus proceeding may not rely on mere allegations contained in the pleadings to defeat summary judgment; rather, the nonmovant must present evidence to establish specific facts showing there is a genuine dispute. *Quinlan*, 138 Idaho at 729, 69 P.3d at 149 (2003).

Next, some of the Petitioners submitted unsworn statements to the district court that describe their concerns about COVID-19 and their conditions of confinement. These unsworn statements were provided in response to the district court's Order to Show Exhaustion of Remedies or Applicability of Exception. As explained above, the unsworn statements describe some of the Petitioners' concerns about the COVID-19 virus and their conditions of confinement. However, the Petitioners' statements were not made under penalty of perjury, and, in some cases, the statements were unsigned or undated. Stated differently, the unsworn statements do not comply with Idaho Rule of Civil Procedure 56 or our case law. Consequently, the statements do not have any probative weight when ruling on summary judgment. *Camp*, 107 Idaho at 882, 693 P.2d at 1084.

Next, the Petitioners cite two recent federal district court decisions from California to support their argument that the Petitioners here face an imminent danger. *Castillo v. Barr*, No. CV2000605TJHAFMX, 2020 WL 1502864, at *1 (C.D. Cal. Mar. 27, 2020); *Bent v. Barr*, No. 19-CV-06123-DMR, 2020 WL 1812850, at *1 (N.D. Cal. Apr. 9, 2020). These federal district court cases are not binding on this Court, of course, but may be instructive.

The federal district court cases cited by the Petitioners are distinguishable from the case at bar for at least two reasons. First, both decisions pertain to civil immigration detainees being held by the United States government. *Castillo*, 2020 WL 1502864, at *1; *Bent*, 2020 WL 1812850, at *1. Second, the petitioners in these cases based their actions on various Fifth Amendment claims because they are civil, not criminal, detainees. *Castillo*, 2020 WL 1502864, at *3; *Bent*, 2020 WL 1812850, at *2. In contrast, the Petitioners here are criminal detainees and are basing their habeas corpus action on alleged violations under the Eighth Amendment. As the *Castillo* court noted, "[t]he theme underlying the [p]etitioners' various Fifth Amendment claims

11

is that they are civil, not criminal, detainees." *Castillo*, 2020 WL 1502864, at *3. "As civil detainees, [they] are entitled to more considerate treatment than criminal detainees . . . ." *Id.* The *Castillo* court then opined that "a civil detainee's constitutional rights are violated if a condition of his confinement places him at substantial risk of suffering serious harm, such as the harm caused by a pandemic." *Id.* It is worth noting, however, that other federal district courts have reached the opposite conclusion in similar cases. *See, e.g.*, *Dawson v. Asher*, No. C20-0409JLR-MAT, 2020 WL 1304557, at *3 (W.D. Wash. Mar. 19, 2020) (holding that the mere possibility of harm from the COVID-19 virus is insufficient to warrant extraordinary relief). Consequently, the federal district court cases cited by the Petitioners have limited utility with respect to the case at bar.

Lastly, the Petitioners reference this Court's orders concerning the COVID-19 pandemic and its impact on Idaho's criminal justice system. *See* Order In re: Emergency Reduction in Court Services and Limitation of Access to Court Facilities (April 22, 2020), https://isc.idaho.gov/EO/CERTIFIED-042220-Emergency-Reduction-Order.pdf (ordering that court services be curtailed to protect the public and mitigate the spread of the COVID-19 virus); *see also* Order In re: Amendments to the Idaho Misdemeanor Criminal Rules (May 13, 2020), https://isc.idaho.gov/EO/Order-In-Re-IMCR-Amendments-CERTIFIED.pdf (establishing a temporary book-and-release bond schedule for certain low-risk offenses to reduce jail populations in light of the COVID-19 pandemic). It is true that this Court has taken extraordinary measures in light of the danger presented by the COVID-19 virus. We have also recognized the unique challenges faced by jails and other correctional facilities as a result of the COVID-19 pandemic. We have expressly stated, for example, that reducing jail populations due to the COVID-19 pandemic "is an important goal when the accused offender does not pose an undue public safety risk to society or a risk of flight . . . ." Order In re: Amendments to the Idaho Misdemeanor Criminal Rules. With that said, this Court's orders do not constitute evidence or judicial notice that the Petitioners here face imminent danger. Rather, the Court's orders are a measured judicial response to the pandemic intended to balance the rights of defendants and the protection of society, while mitigating potential dangers associated with the COVID-19 virus.

Based on the foregoing, and absent any specific evidence of imminent danger to prisoners housed within the Jail requiring immediate court intervention, the Petitioners are not excused from exhausting administrative remedies merely because the COVID-19 pandemic constitutes a

general risk to inmates. We hold, therefore, that the district court did not err when it granted summary judgment in favor of the Officials based on the failure of the Petitioners to exhaust administrative remedies.

> **3. The district court did not err when it granted summary judgment on the basis that there is no genuine issue of material fact as to whether the Officials' actions constitute deliberate indifference or the imposition of punishment.**

The Petitioners contend that the district court erred when it held that there is no genuine issue of material fact "as to any assertion . . . that the [Officials'] actions in response to the COVID-19 virus[] constituted deliberate indifference or the imposition of punishment." We disagree.

The appropriate inquiry in a habeas corpus action when a prisoner alleges a jail official has failed to address a serious medical need is whether the official exhibited deliberate indifference. *Hayes v. Conway*, 144 Idaho 503, 507, 163 P.3d 1215, 1219 (Ct. App. 2007). Deliberate indifference to the serious medical needs of a prisoner constitutes a violation of the Eighth Amendment to the United States Constitution. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "To show a prison official was deliberately indifferent, the inmate must show that the prison official knew that the inmate faced a substantial risk of serious harm, and the prison official disregarded that risk by failing to take reasonable measures to abate it." *Hayes v. Kessler*, 161 Idaho 833, 838, 392 P.3d 11, 16 (Ct. App. 2016).

Here, the Officials' motion for summary judgment was supported by two declarations from Lieutenant Gavin and other admissible evidence that shows the Officials have implemented mitigation measures to abate the risk associated with the COVID-19 virus. Lieutenant Gavin's declarations, in particular, show that the Jail has implemented numerous policy and procedural changes in response to the COVID-19 pandemic. Those measures include:

> On March 13, 2020, jail staff were notified that if an inmate comes to jail with symptoms of a cold or flu, staff must make sure the inmate is housed separate from other inmates. Detention Deputies and jail staff were given the directive that if an inmate is housed separately because of flu-like symptoms, that inmate must be afforded cleaning supplies on a daily basis and the inmate will be educated about proper personal hygiene, i.e., washing their hands with soap and water and covering their coughs and sneezes. Deputies and staff were also urged to practice good hygiene themselves by washing their hands, wearing gloves when interacting with inmates, covering their coughs and sneezes, and staying home and notify their supervisor if they are feeling ill. Each detention employee was sent the 'Interim guidance for mass gatherings and public events in Idaho' dated March 12, 2020, regarding limiting gatherings to no more than 250 people.

13

On March 16, 2020, all inmate programs in the county jail, i.e., those facilitated by volunteers and contractors, and contact visits were suspended. See Exhibits U1 and U2.

On March 17, 2020, as set forth in Exhibit V, deputies and staff have been required to screen all new arrestees in the pre-booking area prior to being accepted into the facility for intake processing. Screening is done by asking the inmate questions about their contacts and travel and taking the inmate's temperature. Deputies and staff were notified that inmates with a fever over 100.3 are to be refused and sent to the hospital to be medically cleared first. When an inmate is cleared to come in the jail, deputies and staff were directed to issue a mask to the inmate and direct that it be worn for a 14-day quarantine period. Inmate workers are then directed to clean and disinfect the pre-booking area after each new intake.

At the beginning of each shift on March 17, 2020, and thereafter, deputies and staff have their temperatures taken. If a detention employee is found to have a temperature above 100.3 degrees, the employee is sent home until they no longer have a fever. If that same staff member has or starts to experience additional symptoms associated with the coronavirus (dry cough, shortness of breath), the employee is required to be seen/tested for the presence of the COVID-19 virus and not to return to work until medical clearance documentation has been submitted to the Elmore County Human Resources Director.

Since March 17, 2020, when a detention deputy is notified that an inmate is showing signs and symptoms of the COVID-19 virus, the inmate is to be immediately re-housed in cell 106. The contracting medical provider's staff are to be notified immediately so they may determine the best course of treatment for the inmate and whether to conduct COVID-19 or any other testing. Deputies and staff were directed that all inmates who were housed with the symptomatic inmate must also be isolated from other inmates in the jail. If any ill inmates are housed in area 100, detention deputies are required to wear full protective equipment (PPE) before entering into the area 100 hallway and minimize contact with the inmate(s) as much as possible.

Since March 17, 2020, twenty-four hour Immigration and Customs Enforcement (ICE) detainees are to be housed in a quarantine pod with no other inmates. Any inmates housed in the quarantine pod must be moved into individual isolation cell(s) before immigration inmates are moved in. Persons subject to a twenty-four hour ICE hold are not to be offered recreation, library visitation, or any other activity that would require them to leave the quarantine pod. After all persons under a twenty-four-hour ICE hold are released to ICE, the skylight will be open for a minimum of two hours. After venting the quarantine pod, inmate workers are directed to sanitize the pod.

On March 17, 2020, the Elmore County Prosecutor sent a list of non-violent offenders he sought to have released from the jail to reduce the jail population.

14

On March 18, 2020, the Idaho Supreme Court's Order Amending Idaho Misdemeanor Rule 13 to reduce the bail bond amount to "Book & Release" for the following misdemeanor offenses in violation of Idaho Code §§ 49-301 (no license/invalid license), 18-8001 (DWP offenses), 49-1229, 49-1232, and 49-1428 (no insurance) was distributed to Sheriff's Deputies. Detention Deputies were ordering that no one should be put in jail or required to bond out for the offenses listed in the Order.

On March 19, 2020, the Elmore County Jail's work release, split time, and weekender options and the Sheriff Inmate Labor Detail (SILD) programs are suspended.

Since March 22, 2020, detention employees were directed that cleaning products, equipment and supplies will go into the pods every day for a thorough deep cleaning. Previously, cleaning products, equipment and supplies for a deep-clean [were] not sent into the pods on Mondays.

As of March 23, 2020, the Sheriff directed that any training outside of Elmore County must be pre-approved by the Sheriff or Chief of Operations and any Sheriff's Office employee planning to travel outside Elmore County for leisure or vacation must notify their supervisor.

Since March 25, 2020, Detention deputies and staff have been directed to put a copy of the COVID-19 screening form in the inmate's file and in the medical in-box.

On March 26, 2020, the Elmore County Jail stopped accepting commitments. If an individual attempted to check into jail to complete a portion of jail time, the Detention Deputy directs the individual to file for an extension of time with the court prior to the deadline for completing jail time on the person's commitment paperwork.

On March 26, 2020, all inmates received notice of the precautions against the COVID-19 contagion taken by the Elmore County Jail. Inmates received information explaining the up to fourteen-day incubation period, how the virus is transmitted, the importance of washing hands and not touching the face. Within a fourteen-day incubation period, inmates were instructed to wear a provided mask.

On March 27, 2020, pod 1100 and pod 1200 were cleared of inmates and designated as 'quarantine pods.' New arrestees will be held in a quarantine pod for the first fourteen days of incarceration. During the quarantine period, each inmate will have their temperature checked at least daily and will be checked for the signs/symptoms of COVID-19 by medical staff. After fourteen days with no symptoms, the inmate may be re-housed in a general population pod.

Since March 30, 2020, inmates are not sent to a central location in the jail to have their hair cut. Instead, hair cutting supplies are sent into each pod for individual use and then sanitized with barbicide/clippercide spray between each use. Additionally, the Jail obtained a computer for inmates to use in Zoom videoconferencing by the Elmore County Court for hearings and purchased two no-touch medical thermometers for screening of staff and inmates.

Since April 1, 2020, arrestees are brought into the sally port where detention deputies, wearing a face mask, gloves and eye protection, meet to take their temperature and ask them the questions on the COVID-19 screening questionnaire. Since April 6, 2020, arresting deputies and officers have not been authorized to enter the jail past the pre-booking area.

As of April 7, 2020, the Elmore County Jail has been accepting commitments with guidance from the Elmore County Prosecutor. An individual who attempts to check into jail to complete jail time is met in the lobby by a Detention Deputy wearing a face mask, gloves, and eye protection, asked all questions on the COVID-19 screening questionnaire, and have their temperature taken. If the person is positive for signs/symptoms on the screening form or has a fever, the person's information, including how ma[n]y days they have left to complete their sentence, is sen[t] to the Prosecutor's Office to request an extension of time. If the person is at the end of their time to complete their sentence and they are positive for signs/symptoms on the screening form or have a fever, the Detention Deputy contacts the on-call prosecutor to request an immediate extension. If the individual passes screening, the person is booked into the jail, issued a face mask and housed consistent with the jail's quarantine procedures.

Since April 8, 2020, spray bottles with disinfectant are distributed to each pod after lunch to clean the pod. Spray bottles are picked up after use to prevent the cleaning product from being used as a weapon against inmates and staff.

On April 13, 2020, the jail began using Zoom for telemedicine for all inmate Mental Health visits.

Since April 14, 2020, all inmates being transported outside the jail are required to wear a mask and gloves. Transport officers actively transporting inmates are required to wear a mask and gloves and transport vehicles are sanitized at the end of the normal duty day and after any unscheduled transport on nights or weekends. Belly chains, shackles, and handcuffs are sanitized with barbicide/clippercide after removal from an inmate/arrestee. Detention Deputies are encouraged to use disposable single flex cuffs for non-emergent, compliant inmate movement within the facility.

Jail staff completed training on the proper procedure for donning and doffing PPE on April 15, 2020. Jail staff were reminded that they must wear a mask and gloves each time they enter a quarantined area in the jail and informed that they are authorized to wear face masks for the duration of their shifts.

The COVID-19 procedures are updated as knowledge about COVID-19 increases.

The Petitioners' response in opposition to the motion for summary judgment fails to show a genuine issue of material fact exists. On May 5, 2020, the Petitioners submitted a declaration from their attorney ("May declaration") in opposition to the Officials' motion for summary judgment. However, the May declaration included only two exhibits—an order to self-

isolate issued by the Idaho Department of Health and Welfare and a document promulgated by the Centers for Disease Control and Prevention entitled "Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities." The Officials provided these same documents as part of their exhibits in support of their motion for summary judgment. The April declaration, which the Petitioners filed in response to the district court's Order to Show Exhaustion of Remedies or Applicability of Exception, also misses the mark. The April declaration included two news articles concerning the COVID-19 pandemic and its impact on jails in Bannock County, Idaho, and Chicago, Illinois, but they do not directly pertain to conditions of confinement at the Jail. The April declaration also included two letters from the Sheriff of Ada County that do not directly concern conditions of confinement at the Jail. And, as described above, the April declaration included unsworn statements from some of the Petitioners describing their concerns about the COVID-19 virus and their conditions of confinement. However, the Petitioners' statements were not made under penalty of perjury, and, in some cases, the statements were unsigned or undated.

As noted, unsworn statements "are entitled to no probative weight" when ruling on motions for summary judgment. *Camp*, 107 Idaho at 882, 693 P.2d at 1084. Idaho Rule of Civil Procedure 56(c)(4) clearly sets out the process to oppose summary judgment: an affidavit or declaration "used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Likewise, this Court has made it clear how summary judgment is to be opposed: "When considering evidence presented in support of or opposition to a motion for summary judgment, a court can only consider material which would be admissible at trial." *Union Bank*, 163 Idaho at 314, 413 P.3d at 415. Consequently, the Petitioners unsworn statements are ineffective in opposing the Officials' motion for summary judgment.

The Petitioners also made a number of general assertions regarding the COVID-19 pandemic and their conditions of confinement in their petitions. Those assertions are also ineffective, however, in opposing summary judgment. *See Quinlan*, 138 Idaho at 729, 69 P.3d at 149 (stating that the nonmoving party in a habeas corpus proceeding may not rely on mere allegations contained in the pleadings). The nonmoving party must present evidence to establish specific facts that show there is a genuine dispute. *Id.*

17

Under Idaho Rule of Civil Procedure 56(a), a "court must grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." If the movant demonstrates the absence of a question of material fact, the burden then falls on the nonmoving party to demonstrate an issue of material fact exists. *Eagle Springs*, 165 Idaho at 868, 454 P.3d at 510. The nonmoving party must present evidence contradicting the evidence submitted by the movant. *Id.* A mere scintilla of evidence is not adequate to create a genuine issue of material fact. *Id.*

Here, the Officials, as the moving party, met their burden of showing there is no genuine dispute as to any material fact regarding whether the Officials' actions constitute deliberate indifference or the imposition of punishment. The evidence indicates that the Officials have implemented mitigation measures at the Jail to abate the risk associated with the COVID-19 virus. This evidence directly refutes the Petitioners' claim that no detectable measures have been taken to protect the Petitioners in response to the COVID-19 pandemic. The evidence provided by the Officials dispels any notion that the Officials acted with deliberate indifference. In contrast, the Petitioners have failed to show that a genuine issue of material fact exists for the reasons explained above. The May declaration includes the same exhibits that the Officials provided as evidence in support of their motion for summary judgment. There is no genuine dispute as to any material fact. Furthermore, the April declaration made by the Petitioners' attorney was not made on personal knowledge. *See* I.R.C.P. 56(c)(4) ("An affidavit used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.").

Even if the Petitioners' statements included with the April declaration were properly made under penalty of perjury, they do not create a genuine issue of material fact as to whether the Officials' actions in response to the COVID-19 pandemic constitute deliberate indifference or the imposition of punishment. The Petitioners have not provided evidence showing that the mitigation measures delineated in Lieutenant Gavin's declarations are not adequate or that the measures have not been implemented. Furthermore, the Petitioners have not provided evidence showing that the Officials' actions constitute deliberate indifference or the imposition of punishment.

18

Consequently, we hold that the district court did not err when it granted summary judgment in favor of the Officials on the basis there is no genuine issue of material fact as to whether the Officials' actions constitute deliberate indifference or the imposition of punishment.

**C. The district court did not err when it refused to consider the Petitioners' new due process claims.**

The district court refused to consider the Petitioners' new due process claims relating to delays in court proceedings when it granted the Officials' motion for summary judgment because the new claims were not relevant to the issues raised in the original petitions. The Petitioners argue that the district court erred when it refused to consider these due process claims. We disagree.

The district court did not err when it declined to consider new due process claims that were raised by the Petitioners for the first time after the Officials had filed their motion for summary judgment. "A habeas corpus proceeding is a civil action and is governed by the provisions of [the Idaho Habeas Corpus and Institutional Litigation Procedures Act] and the Idaho court rules to the extent that such rules are not inconsistent with this act." I.C. § 19-4208. The Idaho Habeas Corpus and Institutional Litigation Procedures Act provides:

> Upon the filing of a responsive motion or pleading, a prisoner may file a reply to the response or the court may order a reply to the response on its own motion. The court should consider any reply filed only to the extent it is relevant to the issues and allegations raised in the original petition for writ of habeas corpus.

I.C. § 19-4209(4).

Here, the petition for writ of habeas corpus filed with this Court on April 3, 2020, alleged constitutional violations associated only with the Eighth Amendment and conditions of confinement. More specifically, the Petitioners identified the following constitutional concerns:

### CONSTITUTIONAL VIOLATIONS

> 44. Pursuant to the Idaho and United States Constitution, the procedure of which is provided for in Idaho statute, prisoners are entitled to a petition for writ of habeas corpus to protect against a violation of their Constitutional Rights. *See* [I.C.] § 19-4201 et[] al.
>
> 45. A writ of habeas corpus may be sought for Constitutional violations relating to the prisoner's "conditions of confinement." *See* [I.C.] § 19-4205(2)(a).
>
> 46. "As noted by the United States Supreme Court, the modern import of the Eighth Amendment requires judges to review conditions of confinement with due regard for broad and idealistic concepts of dignity, civilized standards, humanity and decency. *Estelle v. Gamble*, 429 U.S. 97, 102, 97 S.Ct. 285, 290, 50 L.Ed.2d

19

251 (1976)." *Wilson v. State*, 113 Idaho 563, 567, 746 P.2d 1022, 1026 (Idaho App. 1987).

47. "Even if prisoners are not members of the 'public generally,' the Eighth Amendment (of the U.S. Constitution) protects them from unsanitary living conditions and unnecessary exposure to communicable diseases." *Wilson v. State*, 113 Idaho 563, 566, 746 P.2d 1022, 1025 (Idaho App. 1987) (citations omitted.)

48. The petitioners' current conditions of confinement constitute a clear and present violation of the Eighth Amendment of the U.S. Constitution banning cruel and unusual punishment.

The petition for writ of habeas corpus filed by the male Petitioners on April 15, 2020, contains nearly identical language. We note that both petitions state that the Petitioners "are essentially stuck in their current situation [for] the foreseeable future" because "[m]ost hearings have been cancelled or postponed" due to the COVID-19 pandemic. Neither petition claims, however, that the Petitioners' due process rights under the Fourteenth Amendment to the United States Constitution have been violated due to delays in court proceedings. Rather, the petitions address the Petitioners' conditions of confinement and alleged violations under the Eighth Amendment concerning cruel and unusual punishment.

When the Petitioners filed their response to the Officials' motion for summary judgment, however, the Petitioners claimed for the first time that the Petitioners' due process rights were being violated because of delays in court proceedings associated with the COVID 19 pandemic. They argued:

### III. Petitioners' Rights to a Timely Resolution of their Case and Due Process Are Also at Issue.

Another critical point that should not be overlooked is that in addition to the threat of the COVID-19 [virus], the [P]etitioners' right to due process, i.e.[,] a timely resolution of their claims and access to the courts[,] has been detrimentally affected.

The Petitioners concluded their argument by stating that "[t]his issue yet provides another basis for denying summary judgment to the [Officials] and providing relief to the [P]etitioners."

Under Idaho Code section 19-4209, a court should consider arguments "only to the extent [they are] relevant to the issues and allegations raised in the original petition for writ of habeas corpus." Here, the new due process arguments contained in the Petitioners' response to the Officials' motion for summary judgment regarding delays in court proceedings are not relevant to the issues and allegations raised in the original petitions. Neither petition claimed that the Petitioners' due process rights under the Fourteenth Amendment were being violated because of

20

delays in court proceedings. Rather, both petitions pertain to the Eighth Amendment and conditions of confinement. Therefore, we hold that the district court did not err when it declined to consider the Petitioners' new due process claims when it granted summary judgment.

### D. The district court erred when it awarded the Officials their attorney fees.

The district court held that the Petitioners' habeas corpus action was frivolous and awarded attorney fees to the Officials. The Petitioners argue, however, that their habeas corpus action involved material issues of law that have not heretofore been settled by statute or case law. Thus, the Petitioners argue that the district court erred when it awarded the Officials their attorney fees. We concur.

The decision to award attorney fees is within the discretion of the trial court, and its decision is reviewed for abuse of discretion. *See Inclusion, Inc. v. Idaho Dep't of Health & Welfare*, 161 Idaho 239, 240, 385 P.3d 1, 2 (2016) (stating that a decision to award attorney fees is subject to an abuse of discretion standard of review); *Lunneborg*, 163 Idaho at 863, 421 P.3d at 194.

"In any habeas corpus action . . . the judge shall award reasonable attorney's fees to the respondent, if, in the judgment of the court, the habeas corpus action was brought frivolously by the petitioner." I.C. § 12-122. In making its decision, the district court must make a specific finding whether the petition for habeas corpus was frivolous. *Id.* A petition for writ of habeas corpus is frivolous if it is "based upon claims which either had no basis in fact or, even if the factual allegations were true, they did not, as a matter of law, justify any relief to the petitioner . . . ." *Id.* A district court may, however, "determine that the action was not brought frivolously when the action involves a material issue of law that has not been settled by statute or by [S]upreme [C]ourt decision . . . ." *Id.*

Here, the district court found the Petitioners' habeas corpus action was frivolous. In doing so, the district court highlighted various reasons for its determination. The district court failed to evaluate, however, whether the habeas corpus action involved a material and unsettled issue of law. *Id.* By failing to consider this issue, the district court did not fully evaluate the legal standards applicable to the specific choices available to the district court. *Lunneborg*, 163 Idaho at 863, 421 P.3d at 194. This constitutes reversible error under the Court's abuse of discretion standard of review. *Id.*

The Petitioners argue that the claims in this case "at the very least address unsettled law" because Idaho has never "had to confront a situation such as this, a world-wide pandemic over a highly contagious and potentially deadly disease . . . ." We hold that the meaning of the term "imminent danger," as utilized in Idaho Code section 19-4206, was a material and unsettled issue of law in the context of the COVID-19 pandemic. The Petitioners made a cogent argument that the threat of the COVID-19 virus constitutes an "imminent danger" under Idaho law. I.C. § 19-4206(1). Furthermore, the Petitioners cited recent case law in support of their position.

Finally, the Petitioners argue that the award of attorney fees here will have a chilling effect on future habeas corpus petitions. They argue:

> [T]his Court should be deeply concerned about the 'chilling effect' of an award of attorney[] fees in this case. Even when represented by counsel (which is rarely the case in a habeas corpus petition), the institutional barriers that a prisoner confronts in whether to pursue such a petition to enforce his or her rights are enormous and daunting. . . . If this Court were to uphold the district court's decision on attorney[] fees, it is highly unlikely that any prisoner or detainee will ever pursue their rights under this statute. This will effectively render Idaho's habeas corpus act useless as a tool to protect against and remedy the violations of Constitutional rights for prisoners and detainees.

The Petitioners' argument has merit. As we stated above, the writ of habeas corpus serves a crucial purpose. The Great Writ insures liberty to persons unlawfully detained by their government. *Smith*, 365 U.S. at 714. Idaho Code section 12-122 also serves an important role, of course, by dissuading prisoners from filing frivolous petitions and by conserving judicial resources. Nevertheless, courts should be reluctant to award attorney fees to respondents in habeas corpus proceedings unless it is clear that a petition is "based upon claims which either had no basis in fact or, even if the factual allegations were true, they did not, as a matter of law, justify any relief to the petitioner." I.C. § 12-122. That is not the case here.

Based on the foregoing, we hold that the district court erred when it awarded attorney fees to the Officials.

**E. The Officials are not entitled to attorney fees on appeal.**

The Officials contend they are entitled to attorney fees on appeal under Idaho Code sections 12-121 and 12-122. We disagree.

Courts may award attorney fees to a prevailing party if the "case was brought, pursued or defended frivolously, unreasonably or without foundation." I.C. § 12-121. Similarly, a court shall

award attorney fees to the respondent in a habeas corpus case if the action was brought frivolously. I.C. § 12-122.

Here, the Petitioners prevailed on one of the issues considered on appeal—namely the award of attorney fees below. Furthermore, we cannot say that the habeas corpus action was frivolous for the reasons previously stated. Therefore, the Officials' request for attorney fees on appeal is denied.

## IV. CONCLUSION

In light of the foregoing, we affirm the district court's decision granting summary judgment in favor of the Officials, but we reverse the district court's award of attorney fees. The Officials' request for attorney fees on appeal is denied.

Chief Justice BURDICK, and Justices BEVAN, STEGNER, and MOELLER CONCUR.